THE CITY OF LEAVENWORTH *et al.* v. JOHN WILSON.

**No. 13,564.** ( 76 Pac. 400.)

SYLLABUS BY THE COURT.

CITIES AND CITY OFFICERS—*Purchase and Construction of Water-works*—*Void Bond Election.* Under the Laws of 1897 and 1901, authorizing cities of the first class to provide themselves with water-works of their own, the purchase of an existing plant and the construction of a new one are separate and distinct methods of executing such a design; and a ballot submitting to the voters of a city of the first class a proposition to issue bonds "to purchase, procure, provide or contract for the construction of water-works," is dual, and for that reason illegal, and an election carried by the use of such ballots is void.

Error from Leavenworth district court; J. H. GILLPATRICK, judge. Opinion filed April 9, 1904. Affirmed.

*F. P. Fitzwilliam,* and *C. R. Middleton,* for plaintiffs in error.

*Atwood & Hooper,* and *Baker & Baker,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: A resident taxpayer of the city of Leavenworth secured an injunction restraining the municipality from issuing water-works bonds in the sum of $400,000, under sections 8, 10, 11 and 12 of chapter 82, Laws of 1897, and section 9 of that chapter as amended by section 1 of chapter 107 of the Laws of 1901 (Gen. Stat. 1901, §§ 660–664). At the time the injunction proceedings were commenced an election had been held, at which a proposition to vote the bonds had carried, but the securities had not been issued. The election proclamation stated the purpose of the election as follows:

"For the purpose of submitting to the electors of the city of Leavenworth a proposition to issue bonds of the city of Leavenworth to the amount and sum of $400,000, to either purchase and procure the Leavenworth City and Fort Leavenworth Water Company's plant, with all its rights, extensions and property thereunto belonging, or provide and contract for the construction of a new water plant."

The ballot presented to the voters and voted at the election made the following submission:

"SHALL THE FOLLOWING BE ADOPTED? To issue bonds of the city of Leavenworth in the sum of $400,000 to purchase, procure, provide or contract for the construction of water-works."

The district court concluded that the ballot contained two propositions — one for the purchase of an existing plant and one for the building of a new plant, and that because it was dual the ballot was illegal and the election void. If this be true the injunction must be upheld.

Section 8 of the law referred to grants in the most ample form to cities of the first class the power to

provide themselves with their own gas, electric-light, electric-power, heating and water plants. Every defect of authority to purchase, procure, provide and construct any of the enumerated plants is completely removed. Section 9 authorizes the issuing of bonds to meet any and all indebtedness created under section 8. In providing for the use of such bonds, however, in the payment of any such indebtedness, an antithesis is apparently made by the language of the act between purchase and construction, as if they were separate and distinct objects of municipal indebtedness. By section 10, under certain conditions, an election is to be called by the acting mayor for the purpose of submitting to the electors " a proposition " to issue bonds "for any and all purposes" mentioned. The last expression, however, is to be related to the obligation of the acting mayor to call the election, rather than to any matter of form in submitting the proposition or propositions to the voters.

Section 2709, General Statutes of 1901, provides as follows :

"Whenever a constitutional amendment or other proposition or question is to be submitted to the voters of the state, or any district or municipality thereof, a separate ballot shall be provided by the same officers who are charged by law with the duty of providing the official ballots for candidates for public office. Such ballot shall comply with the requirements for official ballot for candidates for public office in so far as such requirements are applicable thereto. Upon said ballot there shall be printed by designated title, in brevier lower-case type, the constitutional amendment or other proposition or question upon which the voters within the township, ward or precinct for which such ballot is prepared may lawfully vote, preceded by the words, 'Shall the following be adopted?' If there be more than one constitutional amendment, proposition or question to be voted upon, the different

amendments, propositions or questions shall be separately numbered and printed, and be separated by a broad, solid line one-eighth of an inch wide.''

By section 11 of the statute first referred to it is provided that if the bonds carry the city shall issue them ''for the purpose and in the manner and. to the amount'' specified in the act.   These are the only statutes bearing immediately upon the subject.

The city contends that since the mayor and council, as the organ of corporate authority, have the right to determine whether the city shall buy or shall build, and to make all necessary contracts for purchase or for construction as they see fit, it is unnecessary to submit to the voters any question but that of issuing bonds for providing the city with water-works of its own, and that such submission was fairly made to the voters of the city of Leavenworth.

It is true that the mayor and council have a wide discretion in determining how the city shall be supplied with water (*The State v. Topeka*, 68 Kan. 177, 74 Pac. 647, decided December 12, 1903), and it is true that the people can exercise no part of the authority vested in the governing body of the municipality.   But the statute reserves a large and clearly defined discretion in the matter to the people themselves.   No plan involving the issuing of bonds can be carried out without their sanction.   Even though the mayor and council may contract they cannot pay by means of bonds unless the people approve.   Every arrangement for indebtedness which the mayor and council may make involving city bonds must include an appeal to the ballot-box, and must fail if the ballot-box be found to contain a majority of adverse votes.   This discretion of the taxpayer the mayor and council cannot exercise and cannot control. Since, therefore, no bonds may be issued for any pur-

pose or for any set of purposes unless the people be consulted and give their consent, every voter must have a fair opportunity to register an intelligent expression of his will. This the official ballot failed to provide.

The subject of purchasing a particular water-works plant already in existence is utterly diverse from that of building a new one. It needs neither argument nor illustration to make this plain truth apparent to any mind of ordinary capacity. The judgment of the mayor and council upon one of these subjects might well be approved by the people through a majority vote in favor of bonds, although the judgment of the same officials upon the other subject would be overwhelmingly repudiated at a bond election. The ballot required to be used at the election in question obliged the voter to approve bonds for both purposes or to reject bonds for both purposes. If he favored one plan and disapproved the other he was allowed no opportunity to indicate his view. Because of the dual ballot persons adverse to purchase may have voted with persons adverse to building for bonds which, thus supported, carried, although both propositions would have failed ignominiously had they been separately submitted; therefore, the election was not a fair one to the people of the city of Leavenworth.

Other courts have announced similar conclusions. In the case of *Gas and Water Co. v. City of Elyria*, 57 Ohio St. 374, 49 N. E. 335, a portion of the syllabus reads:

"The purchase of water-works, and the erection of new ones, are distinct measures, requiring different proceedings; and a resolution of council which combines both as one, and provides for the submission, in that form, of the question of the issue and sale of the bonds of the municipality for both purposes com-

bined, is unauthorized, and ineffectual for either purpose; nor can it be made effectual for either by the elimination of the other in the proceedings subsequent to the resolution.   It is the policy of the statute that each measure for which it is proposed to issue and sell the bonds of the corporation shall stand on its own merits, unaided by combination with others, and that it be voted upon as an independent measure, by the council and electors, uninfluenced by such combination.''

In the opinion of the court it was said :

''The power conferred by the statute on the council is to issue and sell the bonds of the municipality 'for the erection *or* purchase of water-works.'   The two purposes are entirely distinct.   The purchase of water-works necessarily implies that they have already been erected, and are a present existing property, the subject of sale and purchase, while the erection of water-works can only have reference to their future construction.   That a municipal corporation may own two plants, one acquired by purchase, and another erected by it, or, after having acquired one in the former mode, may proceed to erect a new plant, is not questioned.   But their acquisition by these two different methods require different proceedings.   And it is the policy of the statute that the proposition for each separate improvement shall stand on its own merits, unaided by combination with any other measure, and be so acted upon by the council in the first instance, and then, if adopted, be so submitted for approval by the electors that each may be voted upon as a separate measure uninfluenced by combination with others.   The reason is, that the requisite majority of the council, and of the electors, may be in favor of one measure, and against the other, or against each; while by uniting them as one, and submitting them to be acted upon in that form, the members of council, and the electors, are required to vote for or against both propositions combined, or abstain from voting at all, and thus denied the right to express their will with respect to each.''

In the opinion of the court in the case of *Truelsen v. City of Duluth*, 61 Minn. 48, 55, 63 N. W. 714, it was said :

"If the city council desired to place a proposition to erect a water and light plant or plants fairly and reasonably before the voters, as against a proposition to purchase the existing plant, the propositions should have been submitted so as to allow a free and full expression on the real merits of each."

In the case of *North v. Platte Co.*, 29 Neb. 447, 452, 45 N. W. 692, 26 Am. St. Rep. 395, a portion of the opinion reads :

"The evil of a proposition in the alternative form is, that voters who may be hostile to one of the roads named, and who would vote against aid to such road, may be induced by reason of the supposed probability of the railroad in which he is in favor being the successful line, to vote in its favor, and thus the proposition in that form may be adopted by the requisite majority, when, had propositions been submitted separately, both would have failed. In other words, electors may be induced to vote for the proposition by exciting false hopes as to the road that will be constructed, and thus carry the proposition by the necessary majority."

The general principle involved was applied in the case of *McBryde v. Montesano*, 7 Wash. 69, 72, 34 Pac. 559. The following is from the opinion :

"By ordinance 178, the city council ordered the submission of a proposition to borrow $25,000 upon time bonds, under the act of March 7, 1891 (Acts, p. 261, c. 128). The purposes for which this money was to be borrowed were set forth in the ordinance as —(1) To pay outstanding indebtedness, $20,000 ; (2) for the purchase of fire apparatus, $1500 ; (3) for the purchase of a lot of land, and the erection of a city hall and jail thereon, $3500. But one ballot was used, 'Bonds, yes,' and 'Bonds, no ;' and appel-

Leavenworth v. Wilson.

lant contends that this was irregular, inasmuch as there were two propositions involved, viz., a proposition to fund $20,000 of old debts, and a proposition to borrow $5000 for future purposes. We agree with him in this, notwithstanding the argument of the respondent that the statute is broad in its permission to borrow money for municipal purposes, and that the acquisition of money to pay debts is a strictly municipal purpose." (See, also, 20 A. & E. Encycl. of L., 2d ed., 1111, and 21 id. 47.)

These views are in harmony with the doctrine announced in the care of *Lewis v. Comm'rs of Bourbon County*, 12 Kan. 186, 213, as follows :

"It may be conceded that two or more questions may be submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together, to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined and the real will of the people overslaughed. By this combination an unpopular measure may be tacked on to one that is popular, and carried through on the strength of the latter. A necessary matter may be made to carry with it some private speculation for the benefit of a few. Things odious and wrong in themselves may receive the popular approval because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections."

Under the provisions of section 2709 of the General Statutes of 1901, quoted above, it was entirely permissible that both propositions should be submitted upon a single ballot, but they should have been separately numbered and printed and separated by the broad solid line there described.

The judgment of the district court is affirmed.

All the Justices concurring.