State ex rel. v. Howell.

STATE *ex rel.* BROWN *et al. v.* HOWELL *et al.,* Election Com'rs.

*(Nashville.* December Term, 1915.)

**MUNICIPAL CORPORATIONS. Officers. Elections. Right to election.**

The charter of the city of Nashville (Priv. Acts 1913, ch. 22.) provides for recalling municipal officers by petition signed by voters equal to 25 per cent. of the entire vote cast for the office of mayor at the last preceding election, demanding the election of a successor of the person sought to be removed. A recall petition demanded removal of a number of officers, some of whom were not subject thereto, because not elected by the city, and others of whom had been removed under the Ouster Law or had resigned. *Held* that, as the petition was joint and it could not be determined whether the voters would have signed it had not all the names been included, the petition is a nullity, and affords no basis for recall election.

Acts cited and construed Acts 1913, ch. 22.

Cases cited and approved: Conn. v. Richmond, 17 Cal. App., 705; Robinson v. Anderson, 26 Cal. App., 644; Leavenworth v. Wilson, 69 Kan., 74.

Cases cited and distinguished: Bennett v. Drullard et al. (Cal. App., 1915), 149 Pac. 368; Hay et al. v. Dorn (1914), 93 Kan., 392.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— THOS. E. MATTHEWS, Judge.

LAURENT BROWN, RICHARD P. DEWS, CHAS. GILBERT, R. L. SADLER and R. A. GOODMAN, for relator.

JNO. W. GAINES, JR., and PITTS & McCONNICO, for defendants.

MR. JUSTICE FANCHER delivered the opinion of the Court.

The charter of the city of Nashville (Priv. Acts. 1913 ch. 22) provides for a commission form of government. It also provides that the mayor or any commissioner elected by the people under this act may be removed from office by the qualified voters of the city.

The suit now before us, on writ of *certiorari* to review the judgment of the court of civil appeals, was instituted in the circuit court of Davidson county by a petition of Laurent Brown and others, asking for a writ of *mandamus* to compel Howell, Turner, and Carr, commissioners of election, to certify a list of voters and to order an election to recall or remove Hilary E. Howse, mayor, and J. M. Wilkerson and R. B. Elliott, commissioners, from office.

The petition avers that there had been signed by upwards of 2500 voters, as required by the city charter, a joint and several petition asking for the removal of these three officials and others, that the petition had been filed with the board of election commissioners for more than thirty days, but that Howell and Carr had refused to join their cocommissioner, Turner, in providing for said election.

State ex rel. v. Howell.

Turner answered and showed a willingness to comply, and averred that he had tried to get his associates to do so, but they refused.

Howell and Carr answered, and pointed out a number of alleged irregularities in the recall petition which they averred justified their refusal to act. These defects were, among others, that Lyle Andrews, commissioner of finance, whose removal was sought, had been removed previously, and his successor selected in a legitimate way; that the petition sought the removal of Wilkerson and Alexander, who were not subject to recall under the charter of the city. They also pointed out that the petition was not joint and several, but jointly against a number of officials, whereas there should have been circulated and presented separate petitions against each separate officer whose removal was sought.

The case was heard on petition and answers.

It appeared that Wilkerson had resigned subsequent to the filing of the petition, and that Howse and Elliott had been temporarily suspended from office under what is known as the Ouster Law (Pub. Acts 1915, ch. 11), a statute of the State providing for the removal of officials from office upon a judicial hearing. The temporary suspension of Howse and Elliott was shortly after the recall petition had begun to circulate among the voters. Since the case has been pending Howse has been permanently removed in the ouster case, and Commissioner Elliott has been restored to office by judgment of this court.

The circuit court judge ordered the commissioners of election to attach their certificate and to order a recall election as to Howse, Elliott, and Wilkerson. The court of civil appeals by a divided court reversed the circuit judge and dismissed the petition.

The city charter provides for the recall by a petition signed by duly qualified and registered voters equal in number to twenty-five per cent. of the entire vote cast for the office of mayor at the last preceding general city election, and demanding the election of a successor of the person sought to be removed, which shall be filed with the chairman of the county board of election commissioners. The petition shall state the grounds on which the removal is sought. The signatures need not be all appended to one paper, but each signer shall add to his signature his place of residence, giving street and number. Five of the signers to each such petition shall make oath before some competent officer that the statements made therein are true, as he believes, and that each signature appended is the genuine signature of the person whose name it purports to be. When filed with the board of election commissioners, they shall determine whether it is signed by a sufficient number of voters to be ascertained from the registered voters, and it shall remain on file at the office of said board, and any citizen may procure a copy. Within thirty days from the date of filing, any citizen may appear before the board of election commissioners and show by competent evidence that the names of parties signing the petition

should be stricken therefrom on the ground that they are not duly qualified and registered voters. After the lapse of thirty days from the filing of the petition the board of election commissioners shall attach their certificate showing the result of said examination. In the event the petition shall be deemed sufficient by said board of election commissioners it shall be its duty to fix a date for holding said election not less than thirty days nor more than ninety days from the date of said certificate that a sufficient petition has been filed.

If by certificate of the county board of election commissioners the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate, and the said board shall then make like examination of the amended petition within ten days after the amendment.

There are other provisions unnecessary to set out. An election is provided for. Any person sought to be removed may be a candidate to succeed himself, and his name shall be placed on the ballot without nomination unless he in writing requests otherwise. If some other person than the incumbent shall receive the highest number of votes, the incumbent shall thereupon be deemed removed from office upon the qualification of his successor, who shall hold for the unexpired term.

It will be seen that the board of election commissioners pass upon the sufficiency of the petition for removal.

134 Tenn. 7

State ex rel. v. Howell.

It appears that one official whose name was included in this recall petition was not then in office and two of these officials were not subject to recall, because they were not elected by the people under the terms of this act of 1913. The election, had it been called, would have been void as to these officials. The learned circuit judge saw the incongruity in this petition to remove men not subject to the recall along with those who might be, and he ordered the *mandamus* to apply only to Howse, Elliott, and Wilkerson. It is urged that this was proper.

We are of opinion the action of the court of civil appeals lays down the proper construction of this statute and the practice. The petition signed by the voters was for the removal of all the officials jointly. By what means can we determine that the people would sign a recall as to one or a few, less than all of the officials? The petition was joint and proceeded against all.

After a judicial inquiry by the courts under the Ouster Bill, Mayor Howse has been ousted from office, and Commissioner Elliott has been restored to office. Wilkerson has resigned. So, if we were to order the writ of *mandamus,* and the election should be held, it could only apply now to Elliott, the only remaining officer subject to removal. How may we know that these 2500 voters who signed the joint petition for removal would now desire the removal of Elliott alone?

This illustrates how improper it is to include a num-

State ex rel. v. Howell.

ber of officials in one petition or proceeding for removal.

The petition signed by the voters constitutes, so to speak, the pleading or indictment initiatory to remove an official. It should be directed against a single individual for the reason, first as we think, that it is so contemplated by the act of the legislature granting this remedy in the city charter. The act starts out with the provision that the mayor or any commissioner elected by the people under the terms and provisions of this act may be removed from such office by the qualified voters of the city. All the way through it grants authority to proceed against an officer sought to be removed, and nowhere indicates that the method may be proceeded with against a number of officials jointly. See Priv. Acts 1913, ch. 22, sec. 32.

The impropriety and injustice of proceeding against a number of persons in one petition is manifest. It is subject to objection on the ground that a voter, when presented with the petition, must judge as to the question of whether he shall ask for a removal of a number of men or else submit to the retention in office of all. He is not given the clear-cut right to pass on each individual and exercise his own individual judgment as to that particular person. The fact that the petition stated the same cause of removal against all does not cure it of this objection. The voter ought to have the right to judge singly against each officer if he so so desires. The legislature evidently so intended.

The same right to exercise independent judgment on each separate official must exist in the initiatory step of removal, as effectively as that the voter may so exercise at the ballot box his right and duty to elect a new official or recall an old one. As well might it be said that the voter shall be compelled to vote for a number of men jointly and be denied the right to vote as to each one singly, as to say he may not judge of the propriety of holding in office each individual official who had been previously elected. The initial step in the removal is quite as important as the final vote in the recall.

The official also should have the right to be judged alone by his fellow citizens as to his own merits or demerits. That the law-making body so intended in providing the recall we have no doubt. To construe it otherwise would be to attribute to the legislature the enactment of an unwise and intolerable law.

We have been furnished with no citation showing that any State has permitted the practice of including in the petition for recall a number of officials to be considered jointly. We take it for granted that none can be found; for counsel have prepared the case with great care. This indicates that the practice is the contrary wherever the remedy has been applied.

Two California cases have been found and cited where the removal of several officials occupying similar positions was sought by separate petitions against each official, circulated, and signed by the voters. These are *Conn* v. *Richmond,* 17 Cal. App., 705, 121

Pac., 714, 719, and *Robinson* v. *Anderson,* 26 Cal. App., 644, 147 Pac., 1182. These cases afford a construction of the proper practice under similar proceedings to that now before the court by a State which was a pioneer in this remedy of recall of public officials.

Those authorities cited by the petitioners holding that the recall is an efficient means of removal and should be given a liberal construction do not touch the question here, which is fundamental and goes to the personal right of the citizen. It is not a mere question of nicety of pleading. It is a question of construction of a statute of the State, and we construe it in accord with the spirit of our institutions.

This law is intended as a simple, direct, and just method of declaring a public official unfit to hold a given office, and gives twenty-five per cent. of the voters the power to stamp him with disapproval. When so disapproved, he is by that act presented to all the voters for recall. How important it is, then, to the official himself, as well as to the public, that such power be so administered as to prevent political combinations, those who object to one official combining with those who object to another.

This is not a mere matter of pleading requiring a demurrer or plea in abatement. In their initiatory petition there was a failure to comply with the statute providing for the recall. The petition being improperly directed at a number of officials jointly, which is not permitted or provided for in the statute, it was a void proceeding.

In *Bennett* v. *Drullard et al.* (Cal. App., 1915), 149 Pac., 368-370, the subject of municipal legislation by an initiative petition directed to the passage of ordinances by the people was before the court. The initiative petition contained matters embracing two so-called alternative propositions or sections along with 'the main ordinance. The conclusion of the court was that the statute authorizing such legislation did not provide for the two alternative propositions to be submitted under one petition. The court declared the whole petition void for that reason. In that case a general rule applying as well here as there was stated as follows:

"The answer to all of these questions depends almost entirely upon the provisions of the city charter. It is agreed by the parties to this proceeding that the charter is a grant of the powers, and not a limitation, so that no act can be legally exercised thereunder unless such act finds express authority in the charter itself, or is implied from some of its express terms."

That court cited for the proposition McQuillin on Municipal Corporations, vol. 1, p. 783. And this is in accord with the previous holdings of our court.

The California court impliedly held that to authorize the submission of more than one ordinance in one petition it should have been provided for by the charter of the city. The court used the following language:

On the first point, that is, the claim that an initiative petition may contain more than one ordinance, no provision of the city charter to that effect has been

shown to the court, and after a somewhat exhaustive search the court has been unable to find any. On the contrary, in every section throughout the article of the charter dealing with the initiative, the singular, 'ordinance,' is used, and there is nothing contained in said sections which gives the slightest encouragement to the claim of petitioner."

Then going further to the policy as well as the legality of submitting more than one ordinance to be voted on, and that to be the one the voter had petitioned for, the court further said:

"Here is a power granted unto the people to propose their own laws for adoption, provided certain legal procedure be allowed to properly place said laws before the voters. Assume, if you please, that certain features are included in such proposed laws or in connection therewith, which appealed to the voter, and in fact served as the controlling influence inducing him to sign the petition; has he not the right to assume, and should not the law protect him in the assumption, that he will have the opportunity and right to vote for the matters which he has petitioned for?"

The application of the reasoning in the California court above quoted is apparent. The learned circuit judge eliminated some of these officials from the petition in order to make it apply to those whom he conceived might be legally removed from office. But how may the court know that the required number of voters would have signed the petition if some of the names had been left out of the petition?

In the opinion of the California court in the case last cited it was held that the alternative features included in the initiatory petition rendered it void; that, embracing matters not permissible, it could not be cured by a revision by cutting out the illegal features.

There is no more reason for reading into the charter of Nashville an implied power to include more than one official in a petition for removal than there was for the California court to find an implied authority in the charter provisions there considered to include in the initiative petition more than one ordinance to be voted on. The principles there decided have full application here.

The inclusion of the three officers in the petition who were not subject to the recall was illegal, therefore, because neither the election board nor the court by *mandamus* had the right to split up the recall petition and segregate objectionable features, and submit to the voters only those portions of the recall petition deemed proper or legal.

The inclusion of unauthorized and improper matter in the petition, namely, the three officers not subject to the recall, rendered the petition dual, and for that reason illegal. This proposition in principle was held in two Kansas cases. In one case the question of purchase of an existing water plant for the city, and the construction of a new one were attempted to be included together, submitting to the voters a proposition to issue bonds "to purchase, procure, provide, or contract for the construction of waterworks," and in-

cluded in one ballot. This was held to be dual, and for that reason illegal, and an election carried by the use of such ballots was void. *Leavenworth* v. *Wilson,* 69 Kan., 74, 76 Pac., 400, 2 Ann. Cas., 367.

The other Kansas case is *Hay et al.* v. *Dorn* (1914), 93 Kan., 392, 397, 144 Pac., 235-237. This was a *mandamus* suit to require the holding of a recall election. The writ was denied because the petition included not only a demand to elect a successor to the officer sought to be removed for the reasons stated in the petition, but included without statutory authority for it another person therein to be nominated or elected as a successor to the officer sought to be recalled. The supreme court said:

"The statute does not authorize the naming in a recall petition of another person to be nominated or elected as a successor to the incumbent upon his removal. Some electors might desire the recall of the incumbent, provided the successor named in the petition was to be elected, but otherwise would be opposed to the recall. Such a petition presents to the electors a dual question and is illegal. *Leavenworth* v. *Wilson,* 69 Kan., 74, 76 Pac., 400, 2 Ann. Cas., 367. The petition in such case must present the single question, namely: Shall the city officer, naming him, be recalled?"

In the note in 2 Ann. Cas., 369, the illegality of thus submitting dual matters to the voters to be acted upon jointly, and showing the necessity of submitting such questions single and separate from any other ques-

State ex rel. v. Howell.

tion that might influence the voter is illustrated by cita-
tion of a large number of authorities.

For these and other reasons unnecessary to be men-
tioned we conclude that the petition for removal was
absolutely void, and the election commissioners prop-
erly refused to certify it or provide for an election
under it.  The writ was granted in favor of petitioners,
but for reasons herein stated, the judgment of the
court of civil appeals is affirmed.