BEERS, Appellant v. CITY OF WATERTOWN, SOUTH·DA-
KOTA et al, Respondent.

(177 N. W. 502.)

(File No. 4653.    Opinion filed April 16, 1920.    Rehearing denied
June 5, 1920.)

1.  **Municipal Corporations—Electric Plant—Enjoining Bond Issue.
    Complaint For, Demurrer To, Facts Dehors Complaint, Judic-
    ial Notice Of.**

    In determining the merits of a demurrer to a complaint
    seeking to enjoin issuance of municipal bonds, court cannot
    take judicial notice of facts involving municipal circumstances
    not alleged in complaint; such as the majority cast in favor
    of bonds, fact that plaintiff was employee of a corporation
    financially interested in defeat of proposed municipal project,
    etc., such facts, if existing, should have been alleged in an
    answer, without such demurrer.

2.  **Same—Purchase, Erection, Of Municipal Lighting System, Notice
    of Bond Election For, "Constructing, or Purchasing," Whether
    Dual Proposition—Statute Construed—Using Proceeds for One
    of Several Authorized Purposes—Other Decisions Disting-
    uished.**

    Under Pol. Code 1903, Sec. 1229, Subd. 2, empowering city
    council, "to appropriate money to purchase, erect * * * *
    manage and maintain any system or part of a system of light-
    ing for the purpose of providing light, heat and power for
    municipal industries, and domestic purposes," and which au--
    thorized calling a bond election to provide bonds for such
    appropriation, an election notice provided for submission of
    question whether the city shall issue its bonds "for the pur-
    pose of constructing, * * * * or purchasing" such electric
    lighting system, was valid, and not subject to the objection
    that it submitted a dual proposition because it did not submit
    to voters question whether council should purchase an exist-
    ing system, or should construct a new one; it being discre-
    tionary with council to provide the system either by purchase
    or by erection of a new one; had they the funds they could,
    under said statute, choose between purchasing and constructing,
    without an authorizing vote; the statute not contemplating
    that electors should do more than determine whether they
    would provide bonds to supply such funds; which opportunity
    was given in case at bar; nor did the statute require submis-
    sion to voters of question of how the means should be used;
    the question presented being whether, when statute authorizes
    council to provide "any system or part of system of lighting,"
    and it has asked for voters to provide a complete system for
    three purposes, it can use the voted proceeds to provide a

system for but one of the purposes; the bonds not having yet. been issued. Elyria Gas & Water Company v. City of Elyria, 49 N. E. 335, and Farmers' L. & T. Co. v. City of Sioux Falls, 131 Fed. 890, distinguished.

3. **Same—Bond Issue, Vote Authorizing Use of Proceeds for Limited System—Council's Use of Funds Insufficient for Contemplated Purposes, Or for Different Lighting System, Whether Valid Use—Injunction Against Bond Issue, Sustainable.**

Where, under said statutes and election notice, electors have not voted a bond issue for purpose of procuring a lighting system for municipal purposes only, council is not authorized to use such bond proceeds for purposes other than those contemplated by the electors; to start in to use them, knowing they were insufficient to accomplish the contemplated purposes and when council intended to provide a system radically different than the electors were lead to expect, would be as gross a perversion of them as to use of them for a purpose entirely strange to that for which authorized. Therefore held, that such intended use of proceeds of forthcoming bonds would be unlawful; and the council should be enjoined from issuing and selling such bonds.

4. **Same—Complaint to Enjoin Bond Issue Alleging Contemplated Use of Part Proceeds for Machinery for Surplus Steam to Heating Company, Whether Valid Disbursement—Machinery Purchase From Heating System Not Decided.**

In determining whether a complaint to enjoin issuance and sale of municipal bonds, alleging, among other things, that city council contemplated using large part of such proceeds in putting in machinery so that they can sell exhausted surplus steam to a steam heating company, is sufficient, held, that to sell such steam is both proper and commendable, and to use a reasonable sum in adjusting an electric plant so that such steam can be disposed of, would not be an unlawful diversion of money raised by sale of the bonds. Whether council may, at some future date, purchase from the heating system certain expensive machinery to be paid for out of the moneys derived from the bonds (as the complaint alleges is contemplated), not decided.

Gates, J., and Polley, J., concurring specially, and dissenting in part.

Appeal from Circuit Court, Codington County. Hon. WILLIAM M. SKINNER, Judge.

Action by J. H. Beers, against the City of Watertown, South Dakota. a municipal corporation, A. T. Hopkins as Mayor,

Brownie Mather, as City Auditor of the City of Watertown, and P. W. Reed and others as Aldermen and members of the City Council of the City of Watertown, to enjoin and restrain the issuance of bonds of said city to furnish funds to provide the city with an electric plant to furnish electricity for municipal, industrial, and domestic purposes. From an order sustaining a demurrer to the complaint, plaintiff appeals. Reversed, and trial court directed to issue a permanent injunction unless defendants answer, etc.

J. G. McFarland, for Appellant.

Arthur L. Sherin, for Respondents.

(2) To point two of the opinion, Appellant cited: Mr. McQuillan on Corporations, Vol. V, Page 4675, Section 2203; Brown v. Carl, 111 Iowa 608, 82 N. W. 1033; ex rel., Williams v. Sawyer County, 140 Wis. 634, 640, 123 N. W. 248; Elyria Gas & Water Co. v. City of Elyria, (Ohio,) 49 N. W. Rep. 335; Farmers' Loan & Trust Co. v. City of Sioux Falls, 131 Fed. 890; Stern v. City of Fargo, (N. D.) 122 N. W. 403-408-409-410; City of Leavenworth v. Wilson, 76 Pac. 400.

Respondents cited: Sioux Falls v. Farmers Loan & Trust Co., 136 Fed. 721; Nash v. Council Bluffs (C. C.) 174 Fed. 182.

(3) To point three, Appellant cited: Major, et al., v. Aldan Borough, (Penn.) 58 Atl. 490-491.

Respondent cited: Wells v. City of Sioux Falls, 94 N. W. 425; Overall v. Madisonville, 12 L. R. A. (N. S.) 439.

WHITING, J. Appeal from an order sustaining a demurrer to a complaint. Defendant city had voted to furnish funds so that its council might provide the city with an electric plant to furnish electricity for municipal, industrial, and domestic purposes; and this action was brought to restrain the issuance of such bonds and to restrain such council from appropriating any of the money from these bonds for certain purposes for which it was alleged defendants intended to use same.

Three separate and distinct grounds for enjoining the issuance of the bonds are urged on this appeal: (a) That the question of issuing bonds was not properly submitted to the voters; (b) that the amount voted to be raised and all other funds available are insufficient to carry out the full purpose announced in the notice of election, and the council plan upon using the proceeds derived

from sale of the bonds to carry out but one of the purposes contemplated by the voters when voting for the bonds; (c) that a certain contemplated use of a part of the money to be raised by a sale of the bonds is beyond any purpose in the minds of the voters at the time they voted to issue the bonds. We are also called upon to determine whether, if ground "c" should be held insufficient as a ground for enjoining the issuance of the bonds, it yet is a sufficient ground for enjoining the appropriating of any part of the money for the purpose contemplated.

[1] Defendants apparently fail to recognize the fact that all these questions must be determined upon the facts confessed by their demurrer, and not upon any additional facts that may exist. In their brief they have set forth, and apparently ask this court to consider, several facts not alleged in the complaint. Certainly they must understand that the circuit court, and hence this court, cannot take judicial notice of the very large majority vote cast in favor of the bonds; nor of the fact that the plaintiff was an employe of the corporation financially interested in the defeat of the proposed municipal project; nor of the fact that a situation actually exists, and will exist for several years to come, which might make it unnecessary that the entire electric system be provided at this time; nor of the fact that the defendant city had not incurred debts to the constitutional limit. If defendants believed that the existence of these facts was what justified their contemplated action and rendered same lawful, and were not willing to fairly test the sufficiency of the complaint, they should have alleged such facts by way of answer, and not have demurred to the complaint.

The law then in force (subdivision 2, § 1229, Pol. Code 1903) empowered a city council " to appropriate money to purchase erect, * * * manage and maintain any system or part of a system of lighting for the purpose of providing light, heat and power for municipal, industrial and domestic purposes. * * *" The statute authorized the calling of an election to vote on the issuance of bonds to provide the funds for such appropriation. Was the council, under the power thus given, authorized to submit this question in such form as to leave with it the power to exercise its discretion to provide the lighting system either by purchase of an existing system or by the erection of a new one?

2—Vol. 43, S. D.

It did so submit the proposition. The notice of election was as follows:

"A special election will be held * * * for the purpose of submitting * * * the question whether the city of Watertown shall issue its bonds to an amount, * * * said bonds to be issued for the pose of constructing * * * or purchasing a system of electic lighting, for the purpose of providing light, heat, and power for municipal, industrial, and domestic purposes.'"

[2] Plaintff contends that there was thus submitted to the electors a dual proposition, and that the question should have been so submitted as to allow the voters to determine whether the council should purchase an existing system or should construct a new one. There is no merit in appellant's position. Of course, the council might have submitted the question in such form as to have taken from it the power to use the money from bonds voted except for the particular purpose specified in the notice; but it did not take a vote of the people to authorize the council to provide the electric system. If they had had the funds, they could have gone ahead under said subdivision 2 of section 1229, and, exercising their right to choose between purchasing and constructing have provided such system either by purchase or construction or by both. This discretion given by the statute may, in a particular case, be of great value, and, we must presume, was advisedly given by the legislators. It might well be that a council could best protect the interests of the city and her taxpayers by having and exercising this discretion. There is not a word in our statute from which the inference can be indulged that the Legislature intended, in case bonds were needed, that the electors should do more than determine whether they would provide bonds to supply the fund from which the appropriations might be drawn. There is nothing from which it can be inferred that the Legislature intended, whenever bonds were needed, that then the electors, and not the council, should determine the method that should be used for providing the system. Appellant cites the two cases of Elyria Gas & Water Co. v. City of Elyria, 57 Ohio St. 374, 49 N. E. 335, and Farmers' L. & T. Co. v. City of Sioux Falls (C. C.) 131 Fed. 890. The first seems to be the leading case, and we find that it is upon the decision therein that the Sioux Falls Case rests. The Sioux Falls Case cites numerous authorities claimed to be in point, but, with

one exception, they rest on facts having no analogy to those before us. · The exception is the case of City of Leavenworth v. Wilson, 69 Kan. 74, 76, Pac. 400, 2 Ann. Cas. 367, which, in its facts, seems to be on all fours with the Sioux Falls Case, and which also cites the Elyria Case. In the Elyria Case we find that the statute gave to the council the power to submit the proposition of voting bonds "for the erection *or* purchase of waterworks." The resolution of necessity, which also provided for the submission of the question of voting bonds, read that it was "for the purpose of the purchase *and* erection of waterworks." The court said:

"A resolution declaring the necessity for the issue and sale of municipal bonds for the purchase and erection of waterworks is not a resolution for either purpose separately, but for both purposes combined; nor is a vote in favor of issuing bonds for both purposes a vote in favor of either separately"

It seems clear to us that the submission of the question in the conjunctive in the Elyria Case, when the statute only authorized its submission in the alternative, clearly distinguishes that case from the one before us and from the two above referred to wherein the Elyria Case was cited. These cases were, in their facts, analogous to the case before us, and not analogous to the Elyria Case. In the Sioux Falls Case it was said that:

"The power conferred is in the alternative, but the question, as appears in the ordinance, resolution, and notice of special election, was submitted to the voters in the language of the law in the alternative. It thus results that no voter has had the privilege of voting upon the question as to whether he was in favor or not in favor of issuing bonds in the sum of $210,000 for constructing, equipping, and maintaining a system of waterworks. He might have been in favor of the construction of the waterworks system and against purchasing a system, or he might have been in favor of purchasing a system and against constructing one; but he could not vote for one without he voted for both, and the result is that he cannot be said to have voted upon either proposition."

The premise therein stated is true, but the conclusion drawn is unsound. The court cited very fully from the Elyria Case in support of such conclusion, but, as above shown, the premise from which the court in the Elyria Case reasoned was the reverse of the

premise above quoted—while the power was in the alternative, the question was submitted in the conjunctive. We agree fully with the court in the Leavenworth Case when it said:

"Since, therefore, no bonds may be issued for any purpose or for any set of purposes unless the people be consulted and give their consent, every voter must have a fair opportunity to register an intelligent expression of his will."

Such an opportunity was given in the case before us. That question was, in effect:

"Shall the council be furnished the money with which to carry out the power given to it by the statute?"

Those who were in favor of furnishing such money, leaving with the council such power, would vote one way; those opposed would vote the other way. There was given to the voter a "fair opportunity to register an intelligent expression of his will."; such an opportunity was not given in the Elyria Case.

The Sioux Falls Case went to the Court of Appeals; that court's opinion being found in City of Sioux Falls v. Farmers' L. & T. Co., 136 Fed. 721, 69 C. C. A. 373. In discussing the method in which the bond proposition was submitted, the court used the following language, which to our minds is peculiarly pertinent to the facts before us:

"It was also insisted at the argument that the election authorizing the issuance of the bonds by the city was void, because two separate and distinct propositions were submitted to the voters as one. We do not so understand this record. The city council had the power, under the general incorporation act, to construct or purchase waterworks in its discretion, without submitting the question to the electors, provided it could do so within the 5 per cent limit of indebtedness fixed by the Constitution and general incorporation act. Because the city was indebted in excess of the 5 per cent limit would not, in our judgment, destroy the power of the council to purchase or construct waterworks. Its only effect would be to render the power inoperative for want of means. The amendment to the Constitution of 1896 provided a method of securing the amount necessary to permitting additional indebtedness to be incurred for the special purpose of 'providing water for domestic use.' It does not in any way limit the discretion or power of the city council as to the choice of means by which the

water supply should be provided.' By the statute of 1899 cities 'of the first class are given power to incur such additional indebtedness in the form of negotiable bonds for the purpose of providing water for domestic use, either by the construction or purchase of a system of waterworks. The question was submitted in the exact language of the statute, and the sole proposition submitted to be voted upon was whether or not the city should issue bonds to the amount of $210,000 for the purpose of providing water for domestic use. Nothing is said in the statute about submitting to the electors the proposition whether the city shall construct or purchase a system of waterworks. That was a matter to be determined by the city council, under the powers conferred upon it, and with which the electors had nothing to do."

.So in this case, the council, if it had the necessary means, had the power without any vote of the electors to either construct or purchase an electric system. Not having the means, the statute gave to it the power to ask for means, but in asking for such means, it did not have to surrender its power of determining how such means should be used. The question of furnishing the means was submitted in the language of the statute; and the people were given a fair chance to determine whether they would furnish such means. The statute did not require the submission of the question of how the means should be used. That remained to be determined by the council under the powers conferred upon it, with which the electors had nothing to do.

[3] It stands admitted by the demurrer that , because of the fact that the contract under which the streets of defendant city are now lighted is to soon expire, and because the city needs electric power for its city pumping plant, the defendant council contemplates the immediate construction of an electric system "for the purpose of lighting the streets * * * and furnishing power for pumping water"; that the electors voted in favor of issuing the bonds under the belief that the amount authorized was sufficient with which to provide the complete system then contemplated, and that the money derived therefrom would be used to provide a system furnishing electricity for all three purposes, municipal, industrial, and domestic; that the amount of bonds authorized, together with all money available for such purpose, is wholly inadequate

with which to provide a system of electric lighting for all three purposes; and that the council are planning to provide a system which will furnish light and power solely for municipal purposes. The question thus presented is whether, when the statute authorizes a council to provide "any system or part of system of lighting, * * *" and it has asked for bonds with which to provide a complete system for three purposes, it can properly use the money from such bonds to provide a system for but one of the purposes, knowing before it starts to provide such a system that it cannot provide the complete system voted for. If it cannot properly do this, and the taxpayers would be entitled to have such use of the money restrained, then the issue of the bonds should be restrained. We are not confronted with the situation that would have been presented if the bonds had been issued and the work of providing a complete system well begun before it was discovered that a complete system could not be provided with the means at hand.

It may be that facts exist which would fully justify the council in providing an electric system for municipal purposes only; and it would certainly have full authority under the statute to do so if it had funds properly available for that purpose. It may be that the electors of the city would gladly authorize the issuance of bonds for the purpose of getting such a limited system; but they have not so voted. The council would have no right to use funds from the bonds for purposes other than those contemplated by the electors. To knowingly start in to use these funds when the council knew that they were insufficient to accomplish the contemplated purpose and when the council intended to provide a system radically different than what the electors were led to expect would be as gross a perversion of the funds as to use them for a purpose entirely strange to that for which they were authorized. The facts before us are analogous to those before the court in Tukey v. Omaha, 54 Neb. 370, 74 N. W. 613, 69 Am. St. Rep. 711; and in line with the holdings in such case we hold that for the council to use the money as its demurrer confesses it intends to would be unlawful and should be restrained. But in the present case the bonds have not been issued. If they should be issued and come into the hands of innocent parties, the rights of the taxpayers of defendant city might be jeopardized. It fol-

lows that the council should be enjoined from issuing and selling such bonds.

[4]  What we have said above disposes of this appeal; but other questions are presented by the record that would undoubtedly arise if bonds for the partial system are voted and defendants attempt to carry out their present plans.  It is alleged that they contemplate using a large sum of the money to be derived from the bonds in putting in machinery so that they can sell exhaust and surplus steam to a certain heating company. it is also alleged that they have entered into some sort of an agreement under which, at some future date, they will purchase from the heating company certain expensive machinery which is to be paid for out of the moneys derived from the bonds.  As to the first, we hold that to sell exhaust or surplus steam is both proper and commendable, and to use a reasonable sum of money in adjusting an electric plant so that such steam can be disposed of would not be an unlawful diversion of money raised by the sale of these bonds. The other question raised is too remote to demand present attention.  When the city attempts, if it ever does, to purchase this machinery, interested taxpayers can apply for such relief as they may think themselves entitled to.

The order appealed from is reversed, and the trial court is directed to issue the permanent injunction sought unless defendants answer within 20 days from the filing of the remittitur herein.  In case of answer plaintiff may seek pendente lite injunction.

GATES, J. (concurring specially, with whom concurs POLLEY, J.  We grant that, if the city of Watertown had the necessary funds on hand, the city council might determine which of the authorized methods it would pursue to provide an electric light plant, viz. either by purchasing, erecting, or renting, without any intervention of the voters, but that is beside the point.

Subdivision 5, § 1229, Rev. Pol. Code 1903, provided (the italics are ours) :

"No bonds shall be issued by the said city council under the provisions of this section * * * unless at an election after twenty days' notice * * * *stating the purpose for which said bonds are to be issued,* * * * the legal voters of said city by a majority shall be determined in favor of issuing said bonds."

The precise question before us then is: Did the notice of election state the purpose for which the bonds were to be issued? Manifestly no. Two purposes were stated in the alternative, viz. the purchase or the construction of a plant. It was a catch-all proposition designed to secure the assent both of those voters who favored purchasing and those who favored constructing. It was therefore no. submission of the purpose for which the bonds were to be issued. Elyria Gas & Water Co. v. City of Elyria, 57 Ohio St. 374, 49 N. E. 335; City of Leavenworth v. Wilson, 69 Kan. 74, 76 Pac. 400, 2 Ann. Cas. 367; Farmers' L. & T. Co. v. City of Sioux Falls (C. C.) 131 Fed. 890.

We concur in the result, but dissent from that portion of the opinion treating of the duality of the submission.