JULSON, Appellant, v. CITY OF SIOUX FALLS, et al,
Respondents.

(205 N. W. 43.)

(File No. 5836.   Opinion filed August 25, 1925.)

1.  **Municipal Corporations—Injunction — Pleadings — Equity—Complaint, to Enjoin Issuance of Municipal Bonds, Held to State Cause of Action.**

Complaint in suit by citizen and taxpayer, to enjoin issuance and sale of municipal bonds, alleging that by submission of bond question for purpose of acquiring or constructing an electric lighting plant a dual proposition was submitted not contemplated by Laws 1913, c. 119, Sec. 53, held to state cause of action.

2.  **Municipal Corporations — Bonds — Question at Bond Election Should Be to Issue or Not to Issue Bonds for Specified Purpose.**

Laws 1913, c. 119, Sec. 53, providing for election for issuance of bonds either for general or special purpose, contemplates that question to be submitted to voters shall be to issue or not to issue bonds for specified purpose.

3.  **Municipal Corporations—Elections—Voter Should Have Opportunity to Vote Separately on Question of Bond Issue for Each Separate Contemplated Purpose.**

Voter, at election under Laws 1913, c. 119, Sec. 53, should have opportunity to vote separately on question of bond issue for each separate, independent, and distinct contemplated purpose, and must not be deprived thereof by submission as one proposition of alternative question of issuing bonds for two distinct purposes.

4.  **Municipal Corporations—Elections—Submission of Question of Bond Issue for Purpose of "Acquiring or Constructing" Is Submission of Dual Proposition.**

Submission of question of bond issue "for the purpose of acquiring or constructing" an electric plant held to submit to voters a dual proposition, contrary to Laws 1913, c. 119, Sec. 53.

Sherwood, J., dissenting.

Appeal from Circuit Court, Minnehaha County; Hon. John T. Medin, Judge.

Action by A. J. Julson against the City of Sioux Falls and others.  From an order sustaining demurrer to complaint, plaintiff appeals.  Reversed and remanded, with instructions.

*Parliman & Parliman* and *Danforth & Barron,* all of Sioux Falls, for Appellant.

*Roy D. Burns,* of Sioux Falls, for Respondents.

(3)   To point three of the opinion, Appellant cited:  Elyria Gas & Water Co. v. City of Elyria, 49 N. E. 335, 57 Ohio St. 374; Truelsen v. Mayor of Duluth, 63 N. W. 714; McBryde v. City of Motesano, 34 Pac. 559; North v. Platte County, 26 Am. St. Rep. 395; Stern v. City of Fargo, 122 N. W. 403, 28 L. R. A. (N. S.) 665.  ·

Respondent cited:  Beers v. Watertown, 177 N. W. 502; Hartigan v. Los Angeles (Cal.), 149 Pac. 590; Clark v. Los Angeles (Cal.), 116 Pac. 722; Nash v. Council Bluffs, 174 Fed. 182; State v. Allen (Mo.), 77 N. W. 868; Farmers Loan Co. v. Sioux Falls, 136 Fed. 721, 69 C. C. A. 373; Henderson v. Shreveport (La.), 69 So. 90; Tulloch v. Seattle (Wash.), 124 Pac. 481; Blaine v. Hamilton (Wash.), 116 Pac. 1076; People v. Sisson, 98 Ill. 335; · Wood v. Ross (S. C.), 67 S. E. 449; Ryan v. Tuskaloosa (Ala.), 46 So. 638; Simpson v. City of Nacogdoches (Tex.), 152 S. W. 858.

CAMPBELL, J.  Action by plaintiff as a resident, elector, and taxpayer of the city of Sioux Falls, against the city, and the officers and governing body thereof, to enjoin the proposed issuance and sale of certain municipal bonds.  Defendants demurred that the complaint did not state facts sufficient to constitute a cause of action, and, from an order sustaining said demurrer, plaintiff appeals.

The complaint alleges that, pursuant to a resolution of the then board of commissioners of respondent city, a special election was held in said city on November 5, 1918, at which the question of a bond issue was submitted to the voters upon a ballot in the following form:

"Official Ballot.
"Special City Election.
"Sioux Falls, S. D.

"Tuesday, November 5, 1918.

"In favor of the proposition of issuing negotiable coupon bonds to run not to exceed 20 years from the date of their issuance, and bearing interest at a rate not to exceed 5 per cent per

annum, to the amount of $300,000, for the purpose of acquiring, or constructing, equipping and operating a plant for the production and transmission of electricity by wires and other means, to provide the city of Sioux Falls and its inhabitants with means of heating, illumination, and power.

"Against the proposition of issuing negotiable coupon bonds to run not to exceed 20 years from the date of their issuance, and bearing interest at a rate not to exceed 5 per cent per annum, to the amount of $300,000, for the purpose of acquiring, or constructing, equipping, and operating a plant for the production and transmission of electricity by wires and other means, to provide the city of Sioux Falls and its inhabitants with means of heatng, illumination, and power."

At this special election a majority of the votes cast were in favor of the bond issue. January 19, 1920, the governing body of respondent city passed a resolution, which, after reciting the holding of the special election and the result thereof, proceded in the following form:

Whereas, it is deemed advisable at the present time that said bonds be issued by the city of Sioux Falls, and that said bonds run for 20 years and draw interest at the rate of 5 per cent per annum payable semiannually. Now therefore, be it resolved by the board of commissioners of the city of Sioux Falls, S. D., that the three hundred thousand ($300,000) dollars bonds authorized by the electors of the said city of Sioux Falls, S. D., at a special city election held in said city on the 5th day of November, A. D. 1918, to be issued for the purpose of acquiring or constructing, equipping, and operating a plant for the production and transmission of electricity by wires and other means to provide the city of Sioux Falls and its inhabitants with means of heating, illumination, and power, shall run for 20 years and shall bear interest at the rate of 5 per cent per annum payable semiannually both principal and interest payable in the city of New York, state of New York."

The governing body, about April 28, 1920, enacted an ordinance, the material portion of which reads:

"Whereas, it is deemed advisable at the present time that bonds, to the amount of one hundred seventy-five thousand dollars ($175,000.00), be issued by the city of Sioux Falls, and that

said bonds run for 20 years and draw interest at the rate of 5 per cent per annum payable semiannually. And that the balance of the three hundred thousand dollars ($300,000.00) of the bonds authorized to be issued by said election, be issued at a later date and when the same shall be required by the city, for the purposes stated. * * * That the city hereby and herein reserves to itself the right, at any reasonable time hereafter, to issue the balance of said bonds, to wit: The sum of one hundred twenty-five thousand dollars ($125,000) and that the present issue of said bonds shall in no manner curtail the right and authority of the city of Sioux Falls, to issue the balance of said bonds, when the money therefor shall be needed, for the purpose for which it was voted by the electors of the city at said election."

Thereafter, and pursuant to the ordinance of April 28th, $75,000 of bonds were issued and sold, $50,000 thereof on July 19, 1920, and $25,000 thereof on June 19, 1922. The remaining $225,000 have never been issued or sold. January 18, 1924, notice was published by the respondent city auditor to the effect that bids would be received up to February 11, 1924—

"for the purchase of electric light bonds of the city of Sioux Falls, in the amount of one hundred thousand dollars, said bonds to be in denominations of five hundred dollars each, to run not to exceed 20 years from the date of their issuance, and shall bear interest at a rate not to exceed 5 per cent per annum."

And the governing body was about to issue and sell said bonds, being apparently the unissued residue of the $175,000 purported to have been issued by the ordinance of April 28, 1920, and the special election of November 5, 1918.

[1] The complaint, after setting out fully all the facts concerning the bond election and subsequent proceedings of the city commissioners, alleges that by the submission of the bond question to the electors in the manner hereinbefore set out a dual proposition was submitted, whereby the entire bond election was illegal and void and insufficient to authorize the issuance of any bonds. The allegations of the complaint are sufficient to state a cause of action.

It will be noted, both in the resolution calling the election and in the form of ballot used at the election that the proposition submitted was a bond issue—

"for the purpose of acquiring, or constructing, equipping, and operating a plant for the production and transmission of electricity."

The law applicable at the time of this election was section 53, c. 119, Laws 1913, which so far as material to this issue reads as follows, the italics being ours:

"The board of commissioners shall have the following powers: * * *

"(2) To appropriate money for corporate purposes only and provide for the payment of debts and expenses of the corporation, also to appropriate money to purchase, erect, lease, rent, equip, manage, and maintain any system or part of system for the purpose of providing light, telephones, heat, and power for municipal, industrial, and domestic purposes. * * *

"(5) To borrow money on the credit of the corporation for corporate purposes; to issue bonds therefor * * * provided no bonds shall be issued * * * *either for general or special purposes,* unless at an election after 20 days' notice * * * stating *the purpose for which said bonds are to be issued* and the amount thereof, the legal voters of said city by a majority shall be determined in favor of issuing said bonds."

[2, 3] Our statute clearly contemplates that upon a bond election the question to be submitted to the voters shall be to issue or not to issue bonds for a certain specified purpose. It is unquestioned law that the voter should have an opportunity really to express his opinion—that is, he should have an opportunity to vote separately upon the question of a bond issue for each separate, independent, and distinct contemplated purpose. He must not be deprived of his opportunity for expression by submitting, as one proposition, the alternative question of issuing bonds for two distinct purposes, whereby the voter, who may favor the issue for one purpose but oppose it for the other, if he would vote at all, must take his choice between voting for the purpose he opposes in order to support the one he favors, or voting against the purpose he favors in order to avoid the possible success of the one he opposes. The authorities are uniform that the submission of a dual proposition will invalidate the election.  ·

[4] The real question here, then, is whether the submission of the question of a bond issue "for the purpose of acquiring or

constructing, etc." submits to the voters a dual proposition. We think this question should be answered in the affirmative, and agree with the statement of Burch, J., in the case of City of Leavenworth v. Wilson, 69 Kan. 74, 76 P. 400, 2 Ann. Cas. 367, wherein he said:

"The subject of purchasing a particular waterworks plant already in existence is utterly diverse from that of building a new one. It needs neither argument nor illustration to make this plain truth apparent to any mind of ordinary capacity. The judgment of the mayor and council upon one of these subjects might well be approved by the people through a maojrity vote in favor of bonds, although the judgment of the same officials upon the other subject would be overwhelmingly repudiated at a bond election. The ballot required to be used at the election in question obliged the voter to approve bonds for both purposes or to reject bonds for both purposes. If he favored one plan and disapproved the other he was allowed no opportunity [whatever] to indicate his view. Because of the dual ballot persons adverse to purchase may have voted with persons adverse to building for bonds which, thus supported, carried, although both propositions would have failed ignominiously had they been separately submitted; therefore, the election was not a fair one to the people of the city of Leavenworth."

Our view is not in accord with the numerical weight of authority—nevertheless we think it is the more salutary rule and has the support of the sounder reason.

The cases are to be found collected in an annotation in 5 A. L. R., beginning at page 538. To the jurisdictions supporting the majority rule may be added Texas, as evidenced by Simpson v. City of Nacogdoches (1912; Tex. Civ. App.), 152 S. W. 858, and North Dakota, as evidenced by Logan v. City of Bismarck (1923), 49 N. D. —, 194 N. W. 908.

The cases following the majority rule seem to proceed on two lines. Some of them express the view which appears in the majority opinion of this court in Beers v. City of Watertown, 43 S. D. 14, 177 N. W. 502, at page 18 of the South Dakota report, namely, that if funds were already on hand the governing body of the city could exercise its own discretion and expend such funds

either for purchasing an existing plant or for building a new plant, and that it therefor follows that all they need to submit to the voters on the bond issue is the dual proposition. The premise is sound but the conclusion is a non sequitur of rare beauty. If sufficient funds were on hand properly available therefor, the governing body of a city could, in its discretion and without consulting the voters, at least until the matter was referended, expend the funds, by virtue of the powers granted in various subdivisions of sections 6169 and 6170, Code 1919, for manifold purposes, e. g., to construct waterworks, to purchase an electric light plant, to build a municipal steam heating plant, build or buy a street railway, or a telephone system. But, assuredly no one would claim that the question of a bond issue for all of those purposes in the alternative could be submitted to the voters as one single proposition.

The greater number of cases favoring the so-called "majority rule," however, seem to proceed on the theory that in reality only one question is submitted, namely the question of a bond issue for the purpose of providing the city with the given utility—water plant, electric light plant, or what not—and that the method of providing it—whether by construction of a new plant or purchase of an existing plant—is a mere matter of detail to be left in the discretion of the governing body. With this theory we are unable to agree. It would be just as logical, excepting in degree, to submit as a single proposition the question of bonds for a steam heating plant, a street railway, a telephone system, and an electric light plant and then to attempt to support the procedure by saying that really only one question was submitted, "shall the city bond itself to acquire some more municipally owned utilities?" and that the question of what utilities it would acquire was a mere detail for the discretion of the governing body.

We recognize the discretion vested in the governing body as to disposition of municipal funds within proper limits, but when the governing body finds it necessary to appeal to the voters to increase the public debt, and authorize the issuance of municipal bonds, both good law and good faith require that they should submit to the voters without equivocation or confusion of issues the particular and specific purpose for which the bonds are desired. If the governing body wishes to bond to build a new plant, they

should submit that proposition. If they wish to bond to purchase an existing plant, they should submit that proposition. If they do not know whether they wish to build or buy, they are not yet ready to ask for a bond issue, and if they continue in doubt, they can submit both propositions separately.

We recognize that our view as here expressed conflicts with the holding of the majority of the court on this point in Beers v. City of Watertown, supra. It is to be observed in this connection that the decision in the city of Watertown Case turns primarily upon another point, namely, that the complaint alleged and the demurrer confessed that the city council was planning and intending to issue and use the voted bonds for a purpose entirely different from that submitted to the voters, and the result reached in that case could have been equally well arrived at without any mention whatever of the question of submission of a dual proposition. So far as concerns the question of submitting a dual proposition the case of Beers v. City of Watertown is a single decision, comparatively recent, by a divided court on a doubtful point. The decision does not constitute a rule of property, nor has it been long acquiesced in. The election in the instant case was held November 5, 1918, while the decision in the Beers Case was not filed until April 16, 1920, so that it is impossible that the proceedings in the instant case could have been taken in reliance upon the Beers Case, and the authorities of the city of Sioux Falls could not have been misled thereby as to the manner and method of submitting their bond question. We believe that the doctrine of stare decisis should not be applied, and that at this time we are at liberty to recede from the majority opinion there expressed, and to approve, and we do approve, the views on this point therein expressed in the dissenting opinion of Gates and Polley, JJ., and so much of the decision in the case of Beers v. City of Watertown, 43 S. D. 14, 177 N. W. 502, as purports to hold that the question of issuing bonds "for the purpose of constructing or purchasing" is a valid submission is expressly overruled.

It therefore follows that the complaint states a cause of action, and the demurer should have been overruled, and it becomes unnecessary to pass upon the sufficiency of the complaint in other particulars. The order appealed from is reversed and the cause remanded, with instructions that the defendants have leave to an-

swer, and unless answer is made within 30 days from the filing of the remittitur herein, that the permanent injunction issue as sought by the complaint.

SHERWOOD, J. (dissenting). I cannot agree that the proposition submitted to the voters on this ballot "set out a dual proposition." However, it should be observed, the statute does not speak at all of a "proposition." It speaks only of a purpose. Webster defines "purpose" as "that which one sets before himself as an object to be attained." The statute required only that "the purpose" for which bonds are to be issued be given in the notice. In this case the object to be obtained was "a plant for the production and transmission of electricity." The notice of election clearly stated that purpose to be *"for  *  *  *  a plant for the production and transmission of electricity."* (The italics are mine.)

It is true there were two methods of acquiring the plant spoken of, one was by constructing a plant, the other by acquiring it in some other manner. But the real purpose was single, viz., to bond the city for a plant for the production and transmission of electricity. I fail to see how the public is in any way deceived or misled by this form of submission. If the bonds are issued they get their plant in the quickest and cheapest way it can be obtained. I can readily see how the restricted construction adopted by the majority might enable a selfish and unscrupulous individual or corporation, intrenched behind a waterworks or electric light plant or franchise, to continue to charge exorbitant rates for a long period of time in spite of public interests. Suppose such party refused either to sell his plant or reduce his charges, the city must, under the majority view, call a bond election to build a plant. The plant, when built, would still be in competition with the established plant. If the bonds carried, the owner of the old plant might then offer to sell at a figure much less than it would cost the city to build, but the city could not buy because they voted to build a plant. They could not make a binding contract to buy because without a vote of the people they would have no authority to do so. They must either build when they could buy for much less, and thus eliminate a competitor, or they must call another bond election solely on the question of buying out this greedy holder of a public utility. If the people voted to buy at the new election they

might find the price had raised and they could build much cheaper, and this game of hide and seek might continue indefinitely. A construction of the law which permits this to be done, in my view, nullifies the very purpose for which the law was enacted, and hinders the public from obtaining relief from unjust and often exorbitant rates.

The majority opinion frankly admits it "is not in accord with the numerical weight of authority." It is in fact contrary to the opinion expressed by the Supreme Courts of 20 states, including such courts as the Appellate Court of New York, California, and Minnesota; and is supported by decisions of only 3 Appellate Courts, viz., Kansas, New Jersey, and Ohio. Judge Whiting clearly pointed out in Beers v. City of Watertown, 43 S. D. 14, 177 N. W. 502, that the Ohio case is not an authority, because it was based entirely on a statute materially different from ours.

In addition to the authorities cited in the majority opinion, I call attention to authorities found under proposition two on page 543, vol. 5, A. L. R., as sustaining the majority rule. I think both on principle and authority the decision, rendered by a majority of this court in Beers v. City of Watertown, supra, should not now be reversed.

While I concede that the bonds issued by the city of Sioux Falls in the instant case were not issued under the authority of Beers v. City of Watertown, supra, and that this court has a right now to reverse that case, if it sees fit, I think the fact that this decision will not only invalidate $75,000 worth of bonds, heretofore sold by the city of Sioux Falls under the authority of this vote, but will also reverse this court in Beers v. City of Watertown, and change an established rule of property that has been the law of this state since June 5, 1920, a period of more than 5 years, should induce us to invoke the rule of stare decisis in this case, and sustain the former opinion of this court.

Note.—Reported in 205 N. W. 43. See, Headnote (1), American Key-Numbered Digest, Municipal Corporations, Key-No. 918(2), 28 Cyc. 1590; (2) Municipal Corporations, Key-No. 918(2), 28 Cyc. 1590; (3) Municipal Corporations, Key-No. 918(2), 28 Cyc. 1590; (4) Municipal Corporations, Key-No. 918(2), 28 Cyc. 1590.

As to whether proposition submitted to people with reference to erection or purchase of plant or other public utility is single or double proposition, see note in 5 A. L. R. 538.