HENRY MARCELLUS, PROSECUTOR, v. THE BOROUGH OF GARFIELD.

Submitted December 8, 1903—Decided November 7, 1904.

Under the Borough act of 1897 (*Pamph. L., p.* 317), as amended in 1898 (*Pamph. L., p.* 356), a borough council resolved that the question of the *construction* of water works be submitted to the voters. The ballots used at such election read "for" or "against" "the proposition of construction *or purchase* of water works." *Held,* that the question directed by the council to be submitted to the voters was not submitted to them at such election, and that the ballot, being in the alternative, rendered the result of the election inconclusive and nugatory.

On *certiorari.*

Before Justices GARRISON and GARRETSON.

For the prosecutor, *McCarter, Williamson & McCarter.*

For the defendant, *Adrain D. Sullivan.*

The opinion of the court was delivered by

GARRISON, J. The Borough law of 1897 (*Pamph. L., p.* 317, § 69) provides that "it shall be lawful for the council to provide for, cause to be constructed, or purchase, and to operate and maintain water works and a plant for the supply of water for domestic and public use." This absolute power is qualified by section 90 of the same act as amended in 1898. *Pamph. L., p.* 356. It declares that it shall not be lawful for the council to pass or adopt any ordinance or resolution for the construction or purchase of any water works, &c., until there shall have been presented to the council a consent, in writing, that water works, &c., shall be constructed or purchased, which consent shall be signed by the owners of a majority of real estate, &c., nor until the same shall have been assented to by a majority of the legal votes cast for or against the proposition of construction, purchase or contract at any general or special election held in that borough. Special election to be held in manner provided in section 41 of the Borough act for a similar election for a proposed issue of bonds.

The return shows that upon July 9th, 1902, the mayor recommended that the council should proceed to introduce a municipal water plant in the borough, and at that meeting of council appointed a special committee to look into the matter. On July 22d, 1903, this committee made its report, and at the same time presented a petition, signed by a majority of the property owners in the borough, asking that a special election be ordered to determine the question. At the

same meeting of council two resolutions were passed, one determining that it was necessary that a municipal water plant be established, and the other naming a time and place where the question should be submitted to the voters.

The report of the special committee to the council at its meeting on July 22d gave as the opinion of the committee "that it is entirely feasible to *construct* a municipal water plant," and recommended that that question be submitted to the voters. The committee also submitted written consents of a majority of the property owners, petitioning "that a special election be ordered and held to determine for or against the *construction* of a municipal water plant." Of the two resolutions passed that same evening by the borough council one determined that "a plant be constructed and established by the borough of Garfield for the supply of water," and the other, after referring to the consent, in writing, of the property owners, "to the *construction* of water works or water-supply plant," resolved "that the question of the *construction* of water works for the supply of water" for the use of the borough, be submitted to the voters.

The notices of the special election posted up within the limits of the borough and the notice published in the "Hackensack Republican" are identical in language and state the object of the election to be "to determine for or against the proposition for the *construction* of water works."

The ballots prepared for and used at the election were in form as follows:

"BOROUGH OF GARFIELD

"Special Election

"For

"the proposition of construction or purchase of water works for a supply of water for domestic or public use in the Borough of Garfield, according to the resolution of the Council, dated July 22d, 1903."

"Against

"the proposition of construction or purchase of water works for a supply of water for domestic or public use in the Borough of Garfield, according to the resolution of the Council, dated July 22d, 1903."

The official certificate of the result of the election was:

"The whole number of names on the poll list is.... 318
"The whole number of ballots rejected is.......... 23
"For the proposition, received............ 182 votes.
"Against the proposition, received......... 113 votes."

The fifth and sixth reasons filed by the prosecutor challenge the legality of this election upon two grounds—*first,* that the proposition submitted to the voters thereat was not the one which council had by resolution directed to be submitted; and *second,* that the ballots, being in the alternative, viz., for construction *or purchase,* were indefinite and the resulting election therefore inconclusive upon the only question designed by the legislature to be referred to the voters.

Each of these points seems to me to be well taken. The proposition required by the resolution of council to be voted was the discreet question of the *construction* of water works by the borough and not the general policy of the municipal ownership of a water works. The form of the ballots made it impossible for council to obtain any certain response from the voters to the only question it had resolved should be submitted to them, viz., the construction by the borough of a plant. For all that appears, the whole three hundred and eighteen voters may have favored purchase, or, what is more probable, they may have been divided between purchase and construction, perhaps equally so. From no aspect of the case can it be said that the question directed to be submitted was answered in the affirmative by a majority of the voters.

The error under which, as it seems to me, counsel for the defendant labors is that of deeming the popular election to

have been intended by the legislature as a delegation to the
voters of the power to pass an enabling act that should vest
in the borough council general jurisdiction over the subject-
matter; whereas, it seems clear that such election is in the
nature of a referendum by which the popular will may be
made effective upon the specific thing to be done by the bor-
ough council in the premises.

Upon either of the grounds above stated the election was
nugatory and must be set aside.