JOHN HURD, APPELLANT, V. CITY OF FAIRBURY ET AL., APPELLEES.

FILED NOVEMBER 16, 1910. No. 16,876.

1. Municipal Corporations: ISSUANCE OF BONDS: SUIT TO ENJOIN: PLEADING. A special election was called in the city of F. The resolution of submission and notice of election recited that the election would be held "at the regular polling places in the city." In an action to enjoin the sale of the bonds ordered at said election to be issued, one of the grounds for injunction was that the submission and notice were insufficient as not designating the polling places with sufficient certainty. It is held that, in the absence of an averment that there were no regular polling places in the city, or that the electors were in some way deprived of their opportunity to vote, the submission and notice must be held sufficient.

2. ———: ———: VALIDITY. By section 8994, Ann. St. 1909, any city of the class to which the defendant city belongs is given the power to establish and maintain a system of electric lights and to levy a tax for the same, and by section 8995 it is provided that, if the levy of the tax would not raise the necessary amount to establish such electric light system, the bonds of the city may be issued, if so ordered by a vote of the people. The resolution of submission and notice provided for the issuance of bonds "for the purpose of raising a sum sufficient to purchase or install and establish an electric light system within said city." *Held,* That under the statute the bonds voted at the election constituted a valid obligation against the city, the proposition not being dual, nor in the alternative, to the extent of rendering the bonds void.

3. ———: ———: ———. By section 8927, Ann. St. 1909, such city is authorized to purchase, erect, or construct a system of water-works with necessary mains, etc., within the city, and to issue bonds "for the purchase, erection, or construction and mainte-nance of such water-works," etc., when so directed by two-thirds of the legal voters of the city at an election held for that pur-pose. By the resolution of submission and the notice of election the question of issuing the bonds of the city "for the purpose of purchasing or erecting, constructing, locating and maintaining a system of water-works within said city" was submitted at a special election and received the requisite two-thirds majority of the vote cast. In a suit to enjoin the sale of the bonds on the ground that the submission and notice of election were void as submitting a dual and alternative question, it is *held* that the submission and notice were a sufficient compliance with the statute and that the bonds were valid.

4. ———: ———: ———. In cities of the class to which defendant belongs a submission of a proposition to issue bonds for the pur-pose of providing light and water for the use of such city and its inhabitants may be made by resolution duly passed and approved, as well as by ordinance.

APPEAL from the district court for Jefferson county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*C. H. Denney,* for appellant.

*W. J. Moss* and *F. N. Prout, contra.*

REESE, C. J.

This action was instituted in the district court for Jef-ferson county for the purpose of restraining and enjoining

the mayor and council of the city of Fairbury from selling certain bonds of said city issued in pursuance of elections held therein, whereby it is claimed by the city officers that the issuance of said bonds has been duly authorized by the electors. The bonds have been duly certified by the auditor of state, and are ready for sale, but some questions have arisen as to the granting of the power by the electors, and plaintiff, a citizen and taxpayer, has sought the decision of the courts as to the validity of the bonds. The petition is of great length, consisting of a carefully prepared history of the proceedings leading up to the issuance of the bonds, copying the records of the city, and averring that the authority for the action of the mayor and council was not given by the electors. The petition is in two counts and states two causes of action. An election was called to be held on the 26th day of April, 1910, "at the regular polling places in the city of Fairbury," for the purpose of voting on two propositions: One, that of issuing the bonds of the city of Fairbury in the sum of $20,000 "for the purpose of raising a sum sufficient to purchase or install and establish an electric light system within said city;" the other, to issue the bonds of the city in the sum of $115,000 "for the purpose of purchasing or erecting, constructing, locating and maintaining a system of water-works within said city." The former was adopted and carried by the requisite majority, while the latter, failing to receive the required number of votes, was defeated. Another election was called to be held on the 14th day of June, 1910, at which the second proposition was resubmitted, to wit, the issuance of bonds in the sum of $115,000 for the identical purpose as stated in the former submission. This election resulted in the adoption of the proposition by a sufficient vote.

The invalidity of the electric light bonds is alleged and based upon the following grounds: First, the election notice is insufficient because it did not state the polling places at which the election was to be held; second, the question submitted was "whether bonds should be issued

for the purpose of raising a sum sufficient to purchase or install and establish an electric light system within said city of Fairbury," and that the statement of said question made it a dual question and rendered it impossible for the plaintiff and other electors to vote intelligently and to express their sentiments as to whether said city should purchase the old plant or should erect a new one; third, the record of said proceeding is incomplete in not including in said record the final ordinance fixing the form of the bonds. Without further noting the petition in detail, it must be sufficient to say that the objections alleged and urged against the validity of the water bonds are in substance the same as those against the electric light bonds. To each count of the petition the defendants filed a demurrer, assigning as the grounds therefor that the facts stated did not constitute a cause of action. Both demurrers were sustained, and, the plaintiff not desiring to amend his petition, the action was dismissed at his cost. He appeals.

As to the first contention, that the election notice was insufficient because it did not designate the particular places at which the election was to be held in the different wards, it must be sufficient to say that there is no averment in the petition that there were no "regular polling places in the city of Fairbury" before that time designated and established by ordinance or usage, or that there were none such at which elections had been regularly held, and it would seem that the court cannot assume, in the absence of such averment, that there were no "regular polling places in the city." There is no averment that any elector was deprived of his vote, nor that there was any uncertainty as to where the election should be held, and therefore we must presume that all the existing conditions were met by the notice. If there were regular polling places, the notice was sufficient. We cannot say there were not. Actual notice to the body of electors is sufficient. *Wheat v. Smith,* 50 Ark. 266. It is not alleged that under a different notice another result would have

been obtained (*Ellis v. Karl,* 7 Neb. 381), nor that the electors were not apprised of the places where the election was to be held (*State v. Lansing,* 46 Neb. 514), and the election cannot be held void for the reason stated in the petition alone, without further averments.

The next question is one of no little uncertainty and is quite difficult of satisfactory solution. It applies in some degree to both causes of action contained in the petition. Are these submissions dual, or in the alternative? If so, does the form in which the submissions were made render the proceedings void? The proposition to issue the electric light bonds was stated in this language: "Notice of Special Election. Notice is hereby given that on Tuesday, the twenty-sixth (26th) day of April, A. D. 1910, at the regular polling places, in the city of Fairbury, Jefferson county, Nebraska, a special election will be held for the purpose of submitting to the legal voters of said city of Fairbury the following proposition, to wit: Shall the mayor and city council of the city of Fairbury, Nebraska, issue the bonds of said city in the sum of twenty thousand dollars ($20,000), bearing the date of the day of their issue, and maturing in twenty years from date, bearing interest at the rate of five per cent. per annum, payable semiannually, said principal payable at any time after the expiration of ten years at the option of said city, for the purpose of raising a sum sufficient to purchase or install and establish an electric light system within said city of Fairbury, Nebraska?" It is conceded by both parties that at the time of the filing of the petition and issuance of the call for the election, and at all times thereafter, there was an electric light plant in the city, owned by private parties, and for the purchase of which, by the city, negotiations had been and were pending, and that it was the purpose to purchase the existing plant; but, in case purchase could not be made on favorable terms, the mayor and council should have authority to construct and install such plant as might be needed. The principal and leading purpose was to procure a system of which the city

might be the owner. We have been furnished a copy of a very carefully prepared opinion by Honorable L. M. Pemberton, the judge of the district court before whom this case was tried, and, as it disposes of the questions involved in this part of the case in accord with our views, we avail ourselves of his reasoning, and copy quite largely therefrom. He says: "Sections 8994 and 8995, Ann. St. 1909, are the ones that seem to control in said matter. They provide that any city of the second class 'shall have the power and is hereby authorized to *establish* and maintain a system of electric lights for such city,' and that the city council shall have the power to levy a tax not exceeding five mills on the dollar in any one year for the purpose of establishing, extending and maintaining such system of electric lights. That when such tax should be insufficient to establish a system of electric lights as contemplated therein, such city may issue its bonds for the purpose of raising a sum sufficient to establish such an electric light system. It will be seen that the statute authorizes the issuance of bonds, when authorized by a vote of the electors, to *establish* a system of electric lights. The proposition submitted to the electors included the purchase of an electric light system. Does the statute confer authority upon the mayor and council to purchase a plant, even when authorized by a vote, or to submit that question to the electors?

"The word 'establish' is a word of various meanings, but there does not seem to be any dictionary definition that is the exact equivalent of the word 'purchase.' Its primary definition is: to make stable; to settle or fix firmly. Other definitions are: to set up or found; to place on a permanent footing; to put in a settled or efficient state or condition; to place upon a firm foundation. Century, Standard, and Encyclopedic Dictionaries. It would seem that before an electric light plant could be purchased by the city it would have to be 'established' by some one else. Yet, it might not be within the above definitions. If it were about to be removed, or taken down, or to fall into

disuse or decay, or were for any other cause in a precarious or inefficient condition, it would not be 'established' within the meaning of that word as contained in several of its definitions. And it might be necessary or proper for the city to purchase it in order to 'establish' it; that is, put it in a settled or efficient state or condition, or upon a firm foundation and permanent footing. See *State v. Rogers*, 107 Ala. 444, 19 So. 909. The authority to establish a system of electric lights would seem to confer power to do anything necessary to provide the city with a *permanent* and *efficient* electric lighting plant. If by purchasing an old plant and putting it into proper repair and good condition, the city could establish a lighting plant more cheaply than by constructing a new one, I think the city would have authority to do so. Thus it has been held that 'power to establish markets' necessarily conferred the power to purchase and hold the land on which such market was to be erected, and to construct buildings thereon for market purposes. *People v. Lowber*, 28 Barb. (N. Y.) 65; *Ketchum v. City of Buffalo*, 21 Barb. (N. Y.) 294. So of a hospital. *City of Richmond v. Supervisors of Henrico County*, 83 Va. 204, 2 S. E. 26; *Beckman v. People*, 27 Barb. (N. Y.) 260. If authority to 'establish' a market or hospital confers power to purchase land and put a building upon it, I can see no reason why the power to establish a system of electric lights should not confer power to purchase land with buildings already upon it, if by that means the city can get property which it can make into a permanent and efficient lighting plant.

"I therefore conclude that the power to establish a lighting plant confers power, in a proper case, to purchase a plant already in existence; and there is no allegation in the petition that this is not a proper case in which to exercise that power if the mayor and council see fit to do so. The presumption is that they will exercise the power properly and in accordance with law.

"In this view of the matter, the question of the proposition submitted to the electors being in the alternative does

not arise. For, if the word 'establish' includes the word 'purchase,' then the alternative is but a mere repetition, and is included in the one word 'establish.' If the power was to 'erect' a system of electric lighting, and the proposition submitted had been to 'erect and construct' such a system, the proposition would have been properly submitted because both words would mean the same thing. So it is with 'purchase' and 'establish,' for, in the sense used, they both mean the same thing. And, if necessary to carry out the intention of the legislature, the word 'or' as used in said proposition should be construed to mean 'and.' *Thomas v. City of Grand Junction*, 13 Colo. App. 80, 56 Pac. 665."

The submission of the question of issuing bonds for the purpose of supplying a system of water-works for the city designated the 14th day of June, 1910, as the date of the special election, and by it the polling places were definitely fixed, but are referred to in the notice as "the regular polling places." No question is raised as to the fairness of the election, and it is not claimed that there was any confusion or misunderstanding on the part of the electors as to the places at which the election was held. The contention that the submission and notice were defective need not be further noticed.

The part of the resolutions submitting the proposition to the electors, which it is deemed necessary to here notice, is as follows: "Shall the mayor and city council of the city of Fairbury issue the bonds of said city in the sum of one hundred fifteen thousand dollars ($115,000), dated the day of their issue and due twenty years from date, payable at any time after five years from date at the option of said city, drawing interest at the rate of five per cent. per annum, payable semiannually, for the purpose of purchasing or erecting, constructing, locating and maintaining a system of water-works within said city of Fairbury?"

Upon this part of the case the learned district judge says: "The statute involved in this case is section 8927,

Ann. St. 1909. By said section the city is authorized 'to provide * * * for a supply of water for the purpose of fire protection and public use and for the use of the inhabitants of such cities and villages by the purchase, erection or construction of a system of water-works, water mains or extensions of any system of water-works, now or hereafter established or situated in whole or in part within such city or village; and for maintaining the same. * * * Such cities or villages may borrow money, or issue bonds * * * for the purchase, erection or construction and maintenance of such water-works mains, portion or extension of any system of water-works or water supply, or to pay for water furnished such city or village under contract. * * * Provided, further, that no such money shall be borrowed, or bonds issued, unless the same shall have been authorized by two-thirds of the legal votes of such city or village cast for and against the proposition at an election held for that purpose.'

"The foregoing is all of the statute relating to the power to issue said bo . The statute first confers power upon the city to provide for a supply of water for the city and its inhabitants, either by the purchase or construction of a system of water-works. Power is then conferred upon the city to issue bonds for the purchase or erection of such water-works, that is, for the water-works before mentioned, namely, water-works with which to supply the city with water. But no such bonds can be issued unless the same shall have been authorized by two-thirds of the legal voters of such city cast for and against said proposition; that is, the proposition to issue such bonds for a purpose authorized by the statute, at an election held for that purpose. In this case the question submitted to the people, more fully stated, was: 'Shall the mayor and city council of said city issue bonds of said city in the sum of $115,000 to provide a supply of water for the use of the city and its inhabitants, by the purchase or construction of a system of water-works within said city of Fairbury?' The legal voters of the city knew the law under which the

question was submitted to them, and knew the power and authority of the mayor and council thereunder, and voted accordingly. Under said law the mayor and council were the proper persons to elect in what manner the supply of water should be obtained, and if they had had the money could have made said election and put it into effect without submitting any question to a vote of the electors. But not having the money they could not get it by issuing bonds until the question of issuing the bonds had been submitted to the electors and voted by them. The question submitted, of course, must have been, and was, for a purpose authorized by the statute, namely, *for the procurement of a water supply for the city,* either by purchase or construction of a system of water-works as the mayor and council might elect. To this proposition the voters answered 'Yes' by more than a two-thirds vote. The voters have thus expressed their approval of the determination of the mayor and city council to provide a water supply for the city in the manner provided by law, by voting the bonds with which to obtain said water supply. Inasmuch, therefore, as the statute confers power upon the mayor and council to procure a water supply for the city in either of said methods, and the electors of said city have voted bonds to enable the mayor and city council to procure such supply of water in the way pointed out by the statute, I see no reason why the court should overrule both the city authorities and the electors of the city by enjoining the city from disposing of said bonds. As authority for such holding I think the statute itself is wholly adequate; but the following authorities are directly in point: *State v. Allen,* 178 Mo. 555, 77 S. W. 868; *C. B. Nash Co. v. City of Council Bluffs,* 174 Fed. 182; *Thomas v. City of Grand Junction,* 13 Colo. App. 80, 56 Pac. 665.

"The cases cited by plaintiff, namely, *City of Leavenworth v. Wilson,* 69 Kan. 74, 76 Pac. 400, and *Farmers Loan & Trust Co. v. City of Sioux Falls,* 131 Fed. 890, are not only based upon different statutes from ours, but also cite as their authority the case of *Elyria Gas & Water Co.*

*v. City of Elyria,* 57 Ohio St. 374.   The latter case was not only under a different statute but under a different proposition from the one in the present case, and also a proposition not authorized by the statute.   In that case the proposition was for the purchase *and* erection of water-works, while the statute conferred authority to issue bonds for the erection or purchase of such works.   The court does not question the right of the city to own two plants, one by purchase and the other by construction, but says the proceedings would be entirely different, and that a resolution for the purchase *and* construction is not a resolution for either purpose separately, but for both purposes combined.   What would have been the result had the proposition been for the erection or purchase of such works, as provided in the statute, the court does not say.

"It seems to me that the objection that the voters could not express their wills by voting on a proposition to purchase or construct a plant is more superficial than sound. The proposition was to procure a water supply for the city by the purchase or construction of a water plant, in the discretion of the mayor and council.   The voter who did not want to entrust such discretion to them, or who did not want the water-works, only had to vote 'No' in order to express his will completely on the subject.   If he wanted to purchase water-works, but not to construct them, or *vice versa,* he could not complain because the council did not submit that kind of a proposition, because it was not for him to dictate the proposition, but to vote on the one submitted, the same being authorized by statute.

"In the *Sioux Falls* case (131 Fed. 890), the court had decided the case on constitutional grounds before it took up the phase of it under discussion, so that what was said on this question was unnecessary to its decision; besides it does not appear from that case what the authority of the mayor and council was with reference to the construction or purchase of the water-works plant."

It should be noted that the decision of the circuit court in the latter case (*Farmers Loan & Trust Co. v. City of*

*Sioux Falls,* 131 Fed. 890) was reversed by the circuit court of appeals, reported in 69 C. C. A. 373 (136 Fed. 721), in which that court, in an elaborate opinion by Judge Riner, has examined the question with care, and held that the bonds involved in the suit, issued under circumstances quite similar to those under which the bonds in dispute in this case were issued, were legal and binding upon the city of Sioux Falls. That case, as determined by the court of appeals, clearly sustains the decree of the district court in this case.

Another objection presented is that the bonds were issued by virtue of a resolution, and not by ordinance. We regard this question as settled against the contention of plaintiff in *State v. Babcock,* 20 Neb. 522, and we will not further extend this opinion by a rediscussion of the subject.

We conclude that the decision of the district court in sustaining the demurrers is correct, and its judgment is

AFFIRMED.

LETTON, J.

I concur in the opinion. The main purpose of this subdivision of the statute was to authorize the city authorities to provide a water supply and fire protection for the city, to allow them to borrow money for that purpose when authorized by a vote of the citizens, and to leave the details and the exact manner in which the object should be accomplished to the discretion of the city council. The controlling provisions appear as subdivision 15, sec. 69, art. I, ch. 14, Comp. St. 1909. Omitting irrelevant matter it is as follows: "Section 69. In addition to the powers hereinbefore granted cities and villages under the provisions of this chapter, each city and village may enact ordinances or by-laws for the following purposes: * * * XV. To establish, alter and change the channel of water courses. * * * Second, to make contracts with and authorize any person, company or corporation to erect and maintain a system of water-works and water supply.

* * * To provide for the purchase of steam engines or fire extinguishing apparatus and. for a supply of water for the purpose of fire protection and public use and for the use of the inhabitants of such cities and villages by the purchase, erection or construction of a system of water-works, water mains or extension of any system of water-works now or hereafter established or situated in whole or in part within such city or village; and for maintaining the same.- * * * Such cities or villages may borrow money, or issue bonds for the purpose, not exceeding twenty per cent. of the assessed value of the taxable property within said city or village, according to the last preceding assessment thereof for the purchase of steam engines, or fire extinguishing apparatus, and for the purchase, erection or construction and maintenance of such water-works, mains, portion or extension of any system of water-works or water supply, or to pay for water furnished such city or village under contract; and levy and collect a general tax in the same manner as other municipal taxes may be levied and collected, to an amount sufficient to pay the interest and principal of said bonds heretofore or hereafter issued as the same mature, on all the property within such city or village, * * * and all taxes raised under this clause shall be retained in a fund known as 'Water Fund'; Provided further, that no such money shall be borrowed, or bonds issued, unless the same shall have been authorized by two-thirds of the legal votes of such city or village cast for and against the proposition at an election held for that purpose, notice of which election shall have been given by publication in some newspaper published or of general circulation in such city or village for at least two weeks prior to the date of such election." This subdivision further provides for making contracts with private concerns to "maintain a system of water-works and water supply." It gives the city authorities power to make "all needful rules and regulations in the erection, construction, use and management of such water-works, mains, portion or extension of any

system of water-works or water supply"; provides for the appointment of a water commissioner to have the general management and control of the "system of water-works or water supply."

As I view it, the question that was submitted to the voters was whether they should authorize the mayor and council to borrow money to be expended in providing "a supply of water for the purpose of fire protection and public use and for the use of the inhabitants of such cities and villages," the detail of whether by purchase or construction being left to the authorities. If it should be held that each clause in this section separated by the disjunctive "or" constitutes a separate proposition upon which the voters must express their assent or dissent, then there are four distinct propositions which must be submitted to the voters before water supply and fire protection can be made available. It seems to me that, when all that portion of this section controlling the subject of water supply and fire protection is considered, it amounts to but one proposition, or, at most, to two, viz.: Water supply and fire protection—and the real question is whether the city council shall be authorized to borrow money for the general proposition, leaving it to their discretion, if money is voted for fire apparatus alone, whether they shall use a part of it for an engine and part of it for a hose cart or hook and ladder apparatus; or whether, if the money is voted for water supply alone, they shall purchase a water supply system, or shall erect and construct one. It may be even doubted whether the whole matter of borrowing money to purchase fire apparatus and furnish a water supply could not be treated as one proposition, and submitted as one. The purpose of submitting the question is not to control the discretion of the city council in matters of detail, but to ascertain whether the taxpayers are willing to bear the burden of taxation necessary to raise the fund for the purpose. The purpose of the lawmakers is awkwardly expressed, but this is to be expected from a body of practical men from all walks of

life who are probably not as well skilled in niceties of expression as lawyers and judges are apt to be.

In *Linn v. City of Omaha*, 76 Neb. 552, speaking of a different statute, it was said: "A vote of the necessary majority on the question to 'purchase or construct' would leave the matter undetermined and with no choice indicated by the electors." This question was not involved in the case. The point actually decided was that a proposition for the erection of two engine houses and for the purchase of a site for one was but "a detailed statement of the general proposition—to procure engine houses." I do not think this authority militates at all against the conclusion reached in this case. Unless statutes are identical, opinions upon such questions are of little persuasive value, and the cases cited by the plaintiff may, I think, be readily distinguished from this.

ROOT, J., concurs in these views.

SEDGWICK and ROSE, JJ., dissenting.

In *Linn v. City of Omaha*, 76 Neb. 552, this court said: "A vote of the necessary majority on the question to 'purchase or construct' would leave the matter undetermined and with no choice indicated by the electors." If the object of the election is to determine the will of the people as to a proposed investment of the public money, it would seem that the plan of improvement should be fully developed before the election is called, and the proposed expenditure of the public money should be definitely stated so that the voters could intelligently approve or disapprove of the undertaking. This must be the object of the statute. It cannot be supposed that the legislature would require an election to be held for the mere purpose of aiding in the formality of issuing the bonds. The statute governing cities of this class is not as definite in regard to the method of submitting the proposition as are other statutes of similar character. Cities of the first class having from 5,000 to 25,000 inhabitants are required

before submitting such a proposition to procure plans of the proposed system and have estimates made of the actual cost of the proposed improvement and keep them on file subject to public inspection while the proposition is pending, and after a system of improvement is adopted no other system shall be accepted in lieu thereof unless authorized by a vote of the people. Cities of all other classes are placed under similar restrictions. The statute in the case at bar is not as specific as others, but the true construction can be determined from its general purpose, as above stated, and from the language used. It does not seem reasonable to suppose that the legislature intended that bonds might be issued to the amount of 20 per cent. of the assessed value of the property of the city and the money placed in the hands of the council to expend "for the purchase of steam engines or fire extinguishing apparatus, or purchase, erection or construction of waterworks or mains or portions of a .water system or water supply or to pay for water furnished under contract," or for all or any of such purposes as the council might see fit. But this is the language of the statute that is being construed, and, if it means that the proposition voted upon may be to issue bonds for two or more of the purposes specified in the statute, the same reasoning would require us to say that, if the proposition embraced all of the purposes specified in the statute, the submission would be regular and the election valid, and that the council were at liberty to determine for which one or more of the purposes specified the money should be spent. This reduces the argument to the absurd, and shows conclusively, we think, that the true construction of the statute is that the voters shall determine which one of the many purposes named in the statute shall be adopted, and how much money may be expended for that particular purpose. The proposition submitted to the voters was to issue bonds "for the purchase, erection, or construction and maintenance of such water-works." At the election on this proposition did the electors vote bonds to buy an old plant, or

did they vote bonds to establish a new system? To which one of these public improvements the council will apply the proceeds of the bonds after their approval by the majority opinion is wholly a matter of conjecture. How then did the electors know what they voted for? Would either or both of the propositions have carried had they been separately submitted? This question cannot be determined now because the electors were not permitted to answer it. For these reasons, they did not grant power to issue the bonds, and the history thereof contains no such an expression of the electors' will. When such authority can come alone from the electors in the form of an affirmative vote in answer to a question, why should there be any doubt about what the answer means? When the election involves the power to create a vast indebtedness and the taxation of property for a generation or more, each proposition submitted should be plain, separate and distinct, unless the statute provides otherwise. In no other way can there be a fair expression of the will of the electors. In our view, *City of Leavenworth v. Wilson,* 69 Kan. 74, announces the correct doctrine. That case involved a proposition "to purchase, procure, provide or contract for the construction of water-works." In the opinion it is said:

"Every voter must have a fair opportunity to register an intelligent expression of his will. This the official ballot failed to provide. The subject of purchasing a particular water-works plant already in existence is utterly diverse from that of building a new one. It needs neither argument nor illustration to make this plain truth apparent to any mind of ordinary capacity. The judgment of the mayor and council upon one of these subjects might well be approved by the people through a majority vote in favor of bonds, although the judgment of the same officials upon the other subject would be overwhelmingly repudiated at a bond election. The ballot required to be used at the election in question obliged the voter to approve bonds for both purposes or to reject

bonds for both purposes. If he favored one plan and disapproved the other he was allowed no opportunity to indicate his view. Because of the dual ballot persons adverse to purchase may have voted with persons adverse to building for bonds which, thus supported, carried, although both propositions would have failed ignominiously had they been separately submitted; therefore, the election was not a fair one to the people of the city of Leavenworth."