ROY LOGAN, Fred Peterson, C. Bertsch, et al., Appellants, v. CITY OF BISMARCK, a Municipal Corporation, A. P. Lenhart, J. P. French, J. A. Larson, H. A. Thompson, C. W. Henzler, Constituting the Board of City Commissioners of Said City of Bismarck, and M. H. Atkinson, City Auditor, Respondents.

(194 N. W. 908.)

**Municipal corporations — proposition to issue bonds for constructing or purchasing waterworks held not invalid, as submission of double question.**

1. A submission by the city commission of a proposition to issue bonds in a stated amount for "constructing or purchasing" waterworks for the city, is a single question and is, therefore, not within the condemnation of the rule announced in Stern v. Fargo, 18 N. D. 289.

**Municipal corporations — majority of votes for constructing or purchasing waterworks sufficient to carry.**

2. Under the statutes and decisions in this jurisdiction, a majority of the votes cast upon the question of bonding the city for the purpose of constructing or purchasing waterworks, if in the affirmative, carries the proposition and it is not necessary that a majority of all the legal voters of the city vote in favor thereof.

**Municipal corporations — ordinance for delivery of bonds for purchase of waterworks system held valid.**

3. For reasons stated in the opinion, it is *held*, that the ordinance enacted by the city commission, providing for the delivering of the bonds, conform substantially with the question as submitted to the voters and with the resolution ordering the election.

Opinion filed August 17, 1923.

Municipal Corporations, 28 Cyc. p. 1589 n. 54; p. 1590 n. 67; p. 1600 n. 83 New.

Appeal from the District Court of Burleigh County, *Jansonius. J.*
Plaintiffs appeal from an order and judgment dismissing the complaint.

Affirmed.

*O'Hare & Cox (Wm. Langer, S. L. Nuchols* and *Chas. L. Crum,* amici curiæ), for appellants.

Note.—As to what objects or purposes may be combined in a single question submitted to the voters of a municipality, see note in 26 L.R.A.(N.S.) 665.

"The subject of purchasing a particular waterworks plant already in existence is utterly diverse from that of building a new one. It needs neither argument or illustration to make this plain truth apparent to any mind of ordinary capacity. The judgment of the Mayor and Council upon one of these subjects might well be approved by the people through a majority vote in favor of bonds, although the judgment of the same officials upon the other subject would be overwhelmingly repudiated at a bond election." Leavenworth v. Wilson (Kan.) 76 Pac. 400; Gas & Water Co. v. Elyria, 57 Ohio St. 374, 49 N. E. 335; Truelsen v. Duluth, 61 Minn. 48, 63 N. W. 714; North v. Platt Co. 29 Neb. 447, 45 N. W. 692.

The court construes the powers of such corporations strictly and requires strict compliance with the statute and with the authorization as expressed by the voters at the polls for the issuance of the bonds. Stern v. Fargo, 122 N. W. 400; Vose v. Waterloo Water Co. 163 Ind. 69, 71 N. E. 208; Champagne v. Harmon, 98 Ill. 491.

*C. L. Young, City Attorney (Newton, Dullam & Young of counsel),* for respondents.

The object is a single one, the acquiring of a water works system, and so it is held by the great weight of authority. Albuqurque v. Water Supply Co., 24 N. M. 368, 174 Pac. 217; Bowen v. Garber (Okla.) 185 Pac. 1095; Tulloch v. Seattle, 69 Wash. 178, 124 Pac. 81; Thomas v. Grand Junction, 13 Colo. App. 80, 56 Pac. 667; Clark v. Los Angeles, 160 Cal. 30, 116 Pac. 722; Hartigan v. Los Angeles, 170 Cal. 313, 149 Pac. 590; Sioux Falls v. Farmers Loan & T. Co., 69 C. C. A. 373.

"A majority of the votes cast upon a question submitted to a vote, if in the affirmative, carries it, unless the legislative will to the contrary is clearly expressed in the constitution or the law." State v. Glaisdell, 18 N. D. 31, 119 N. W. 360.

JOHNSON, J. This is an appeal from a judgment of the district court of Burleigh county, sustaining proceedings of the city commission of Bismarck, relating to the issuance of bonds for the purpose of providing a system of waterworks for the furnishing of a water supply to the inhabitants of the city.

The facts alleged in the complaint, so far as material to a decision of the controversy, are as follows: The city commission, on April 17, 1923, passed a resolution calling a special election to be held on the 14th day of May following, between the hours of 8 A. M. and 9 P. M. for the purpose of submitting the following question to the electors of the city: "Shall the city of Bismarck issue bonds in the sum of $225,000 in the denomination of $1,000 each, payable one-twentieth each year for twenty years, with interest thereon at the rate of 5 per cent per annum, payable semi-annually, such interest payments to be evidenced by interest coupons attached to such bonds, for the purpose of constructing or purchasing waterworks for the furnishing of a supply of water to the inhabitants of such city?" In this resolution the various wards, precincts and voting places were designated and inspectors and judges of election were appointed. Due notice of this special election was given by the city auditor by posting and by publication as required by law. The election was held on the 14th of May, pursuant to the resolution and notice thereof as aforesaid, and the total number of votes cast at such election was 1,347 of which 1,257 were in favor of and 90 were against issuing the bonds. The number of registered voters in the city of Bismarck, on the date of the election, was approximately 3,621 and it is evident that a majority of the registered voters did not vote at the election. Thereafter the city commission advertised for and received bids for the sale of the bonds in the sum of $225,000 and in due time entered into a contract for the sale thereof, one twentieth to be paid each year, commencing June 1, 1924 and ending June 1, 1943. It further appears that, pursuant to the terms of the contract, the city commission passed an ordinance authorizing the issuance of $225,000 in bonds; that such ordinance provided for the payment of $11,000 on the first day of June, 1924, and a like sum on the first day of June of each and every year thereafter until the first day of June, 1943, when the last payment will be due; on that date the sum of $16,000 shall be paid with interest, according to the terms of the contract.

It is asserted by the plaintiffs that they are taxpayers and that they will suffer irreparable loss and damage if the bonds aforesaid are sold and delivered according to the contract, and they allege that the special election was void and ask that the city commission and the other defend-

ants be perpetually restrained and enjoined from delivering the bonds, or any portion thereof, to the purchasers under the contract.

The defendants answer, admitting all of the allegations of fact except the allegations of ¶¶ 10 and 11, in which it is alleged, in substance, that the election was void and that the plaintiffs will suffer irreparable injury if the bonds are delivered.

Upon the issues thus framed, the trial judge dismissed the complaint and judgment was entered accordingly.

The appellants challenge the legality of the proceedings upon the following grounds; First, that the special election was void because a double question was submitted to the voters and that the resolution of the commission ordered the submission of a double question. This contention is based upon that portion of the resolution which is as follows: *"For the purpose of constructing or purchasing waterworks."* It is claimed that this is in reality a double question rendering the proposition indefinite and uncertain. Secondly, that the special election was void because a majority of all the legal voters in the city did not vote in favor of the proposition, though an overwhelming majority of those who voted at the election voted in favor of issuing the bonds. Thirdly, that the contract is illegal and the Commission exceeded its powers in this that the ordinance, providing for the issuance of the bonds, requires that they shall be paid in twenty years, one twentieth each year, but that the contract calls for a payment of less than one twentieth each year for nineteen years and more than one twentieth at the end of the twentieth year.

We shall consider these propositions in the order presented. Section 183 of the Constitution, so far as material, provides: "Provided, further, that any incorporated city may become indebted in any amount not exceeding 4 per cent of such assessed value without regard to the existing indebtedness of such city, for the purpose of constructing or purchasing waterworks for furnishing a supply of water to the inhabitants of such city, or for the purpose of constructing sewers, and for no other purpose whatever." This language was substantially incorporated in § 3818, Comp. Laws 1913, subd. 4, and also in § 3599, Comp. Laws 1913. Section 3818, in part, reads as follows: "The board of city commissioners shall have power: 4. To borrow money on the credit of the corporation for corporation purposes, and to issue

bonds therefor . . . provided, further, that any city when author-
ized by a majority vote at a general or special election, may become
indebted in any amount not exceeding four per centum of such assessed
value without regard to the existing indebtedness of such city, for the
purpose of constructing or purchasing waterworks for the purpose of
furnishing a supply of water to the inhabitants of such city . . .
and such city may issue bonds therefor . . ." Chapter 34, Comp.
Laws 1921, amending subd. 70, § 3818, Comp. Laws 1913, specifically
provides that the city may "purchase, acquire by eminent domain, erect,
lease, rent, manage and maintain any system of waterworks. ` . . ."
It is not required in this chapter, or elsewhere, that the question of
acquiring waterworks, whether by purchase, lease or original construc-
tion, as apart from the question of issuing bonds to pay for the same,
shall be submitted to the voters at any general or special election.

It seems to us that the real question submitted to the voters is
whether the bonded indebtedness of the city shall be increased by the
amount specified as necessary for the contemplated improvement, in
the instant case, for the purpose of providing a system of waterworks.
The maximum permissible general indebtedness under the constitution
and under the statutes is five per cent of the assessed value of the prop-
erty in the city; for the purpose of acquiring a system of waterworks,
by purchase or original construction, four per cent additional indebted-
ness may be incurred. Whether such indebtedness shall be incurred,
in addition to indebtedness already existing, is the real question to be
decided. Fundamentally and in the final analysis the power granted
by chap. 34, supra, to purchase or construct waterworks would in most
cases be wholly nugatory without the power to incur necessary indebt-
edness in acquiring the plant. It is the last question that is of vital con-
cern to the voters and taxpayers and that is the one required to be
submitted to them. Questions of policy, as to whether the city shall
build, or purchase, lease or acquire by eminent domain, as such, are
not specifically required to be submitted to the electors. Decisions on
these and other matters, involving the management of the affairs of
the city, must be made by the duly constituted authorities in the exer-
cise of discretion.

The authorities are quite unanimous that the proposition of issuing
bonds must be submitted to the voters in such a way as not to involve

two or more distinct and unrelated questions. The law on this point was settled in this state in Stern v. Fargo, 18 N. D. 289, 26 L.R.A. (N.S.) 665, 122 N. W. 403. In that case a dual question was in fact submitted to the electors and the election was held void. The question before us in the instant case is whether a double question was in fact submitted.

The fundamental purpose which the city sought to accomplish was to provide an adequate water supply for its inhabitants, and the question was whether an indebtedness in the sum of $225,000 should be contracted for such purpose. That purpose might be accomplished either by purchasing an existing plant or by constructing a new one. Either method would be equally within the power of the commission, once the funds had been made available in the proper manner. Under § 183 of the Constitution, above quoted, providing waterworks for the city is recognized as *one purpose,* and constructing a sewer system another purpose. The method of accomplishing this single purpose, of providing waterworks and a water supply, whether by purchase or construction, is not required to be submitted to the voters, as heretofore pointed out. The city might contract to have a plant erected, it might itself erect the plant, or it might purchase an existing plant. It would not be seriously contended that the Commission must submit to the voters each or all of these methods. Many matters must be left to the discretion of the duly constituted authorities who are, and should be, held responsible to the voters for the manner in which such discretion is exercised. We are satisfied that the purpose sought to be accomplished is single, is clearly expressed and that the question was submitted in the manner required by the statutes and the constitution. The proposition is not stated in the alternative, within the condemnation of the rule laid down generally against such form of submission. The voters, in the instant case, were not required to vote bonds for two purposes in order to accomplish one object. There is but one proposition before the voters and that is the question of increasing the bonded indebtedness of the city for the purpose of providing a system of waterworks that will furnish the citizens of the city an adequate supply of water; whether the system shall be built or purchased refers to the *manner* of executing the will of the voters if they decide that a system of waterworks shall be provided by the city. This view we think is supported

by the better reason as well as by the weight of authority. Hartigan v. Los Angeles, 170 Cal. 313, 149 Pac. 590; C. B. Nash Co. v. Council Bluffs (C. C.) 174 Fed. 182; State ex rel. Canton v. Allen, 178 Mo. 555, 77 S. W. 868; (see also State ex rel. Columbia v. Allen, 183 Mo. 283, 82 S. W. 103); Farmers' Loan & T. Co. v. Sioux Falls, 69 C. C. A. 373, 136 Fed. 721 (S. D. Statutes); Hurd v. Fairbury, 87 Neb. 745, 128 N. W. 638; Henderson v. Shreveport, 137 La. 672, 69 So. 90; Tulloch v. Seattle, 69 Wash. 178, 124 Pac. 481; People v. Sisson, 98 Ill. 335; Wood v. Ross, 85 S. C. 309, 67 S. E. 449; Bergen v. Gubna, 10 Hun, 11 (see Everett v. Potsdam, 112 App. Div. 727, 98 N. Y. Supp. 963); Ryan v. Tuscaloosa, 155 Ala. 479, 46 So. 638; Simpson v. Nacogdoches, — Tex. Civ. App. —, 152 S. W. 858; Swann v. Murray, 146 Ky. 148, 142 S. W. 244; Oklahoma City v. State, 28 Okla. 780, 115 Pac. 1108; Bowen v. Garber, 77 Okla. 16, 185 Pac. 1095; Thompson-Houston Electric Co. v. Newton (C. C.) 42 Fed. 723; Albuquerque v. Water Supply Co. 24 N. M. 368, 5 A.L.R. 519, 174 Pac. 217. To this list should be added Truelson v. Duluth, 61 Minn. 48, 63 N. W. 714, though cited by "amicus curiæ" in behalf of the appellant as supporting the contrary view. One of the questions submitted in that was "To issue . . . bonds . . . for the purpose of erecting or purchasing a water and light plant." This the court held was a single question, though the election was held void because other and antagonistic propositions were submitted at the same time.

In the case of State ex rel. Canton v. Allen, 178 Mo. 575, 77 S. W. p. 875, supra, the court says: "In support of this position, respondent relies chiefly upon the case of McBryde v. Montesano, 7 Wash. 69, 34 Pac. 559. The propositions submitted to the voters in that case were two, which were entirely different and distinct propositions—one —to fund $20,000 of an old debt; the other, to borrow $5,000 for future use. But they were submitted as one, and it was held that they could not be united, so as to have one expression of the voter answer both propositions. There is a marked distinction between that case and the one at bar, in this: In that case there were clearly two distinct propositions, having different objects in view, while in the case in hand the proposition submitted to the voter was to increase the bonded indebtedness of the town and to purchase or erect an electric light plant. The

same end was intended to be accomplished, but in two different ways, to be determined upon by the board of trustees in the exercise of their discretion. The proposition submitted to the voters was the exact proposition that they were called upon to decide, and while it is, in all probability, *true that some of the voters might have wished to vote for the erection of the plant, and others to purchase a plant already erected, and they did not have the chance to express their views in this regard, we do not think that such fact invalidates the election that was held, or the bonds that were issued by the town in pursuance thereof."* (Italics are ours.)

In only three jurisdictions have we found a different rule announced. See Leavenworth v. Wilson, 69 Kan. 74, 76 Pac. 400, 2 Ann. Cas. 367; Marcellus v. Garfield, 71 N. J. L. 373, 58 Atl. 1099; Elyria Gas & Water Co. v. Elyria, 57 Ohio St. 374, 49 N. E. 335. We shall not attempt to distinguish these cases from or harmonize them with the authorities heretofore cited. In Kansas and Ohio the pertinent con-stitutional provisions, with respect to municipal corporations, were, when the cases were decided, substantially identical, very restrictive, imposing upon the legislature the duty to so regulate the power of taxation by cities as to prevent abuse thereof, but wholly dissimilar from our § 183, quoted above. In New Jersey the Constitution was silent on the subject. In view of our constitutional provisions, we should hesitate, were there no other precedents in point, to accept as conclusive, or even persuasive, the authority of these cases. We do not question their correctness under local statutes and Constitutions, but they are not in point or conclusive in the instant case.

It is next contended by the appellant that the election is void because less than a majority of the electors of the city voted in favor of issuing the bonds. This contention is wholly without merit. It is specifically provided in § 4015, Comp. Laws, 1913, that the bonds may be authorized by a "majority vote of the qualified electors of such city or municipal corporation *voting thereon* at an election regularly called for that purpose."

While § 3818, Comp. Laws 1913, subd. 4, is a more recent enactment than § 4015, the former is but a re-enactment of § 3599, subd. 5, and defines the powers of the city commission in terms substantially identical with those used in defining the powers of the council in cities not

49 N. D.—75.

under the commission form of government. There is no conflict on this point between the two statutes and the legislative intent is clearly expressed in that portion of § 4015, Comp. Laws 1913 quoted above, contrary to counsel's contention. Moreover, it is established in this jurisdiction that a majority of the votes cast upon a question submitted to a vote, if in the affirmative, carries it, unless the legislative will to the contrary is clearly expressed in the Constitution or the law. State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360; State ex rel. Byerley v. State Canvassers, 44 N. D. 126, 172 N. W. 80. See also Spangler v. Mitchell, 35 S. D. 335, 152 N. W. 339, Ann. Cas. 1918A, 373.

It is contended by the appellant that the ordinance passed by the commission, providing for the delivery of the bonds, is not drawn in conformity with the question as submitted to the electors and as provided in the resolution adopted by the commission calling the election, and that the ordinance is therefore void. The ordinance provides for the retirement of $11,000 of the bonds each year for nineteen years and of $16,000 the twentieth year after the date of issue. Under the proposition submitted to and approved by the voters, one twentieth of the amount of the bonds was to be retired each year and the denomination was fixed at $1,000 for each bond. Both provisions cannot be complied with, as a mathematical calculation will demonstrate. One or the other must be disregarded. One-twentieth of the total issue is $11,250. That would mean that eleven $1,000 bonds would mature and that in order to comply with the requirement that one-twentieth be retired each year, another bond in the sum of $250 would have to be issued. It is plain that it would not be advantageous for the city to issue bonds in such a small denomination. The ordinance provides for the retirement of that amount nearest to $11,250, permissible if the bonds are in the proper denomination, to wit: $1,000 each. We think this is a substantial compliance with the mandate of the voters and it cannot be said that anybody is prejudiced thereby.

After careful consideration of the matter, we have come to the conclusion that the trial court committed no error and that its judgment must be affirmed. It is so ordered.

BIRDZELL and NUESSLE, JJ., and BERRY, Dist. J.. concur.

Justice CHRISTIANSON did not participate; Honorable H. L. BERRY, Judge of the Sixth Judicial District, sitting in his stead. ·

BRONSON, Ch. J. (dissenting). This cause has been presented upon stipulation out of term time and without full opportunity for argument and consideration. It is unfortunate, that, through the urgent situation existing and the request of the parties that prompt action be taken, full argument and consideration may not be had. I am of the opinion that the question submitted to the voters, namely, shall the city issue bonds for the purpose of *constructing or purchasing* waterworks, is a double question and falls within the inhibition of the rule announced in Stern v. Fargo, 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403. In that case this court said: "Our whole election system, whether it relates to candidates or public improvements or works, is built up and founded on the fundamental principle that every elector shall be given the opportunity to vote for or against any candidate, or any proposition, independent of and separate from his vote for or against any other candidate or proposition." Further, in the cited case, this court quoted with approval language from the case of Leavenworth v. Wilson, 69 Kan. 74, 76 Pac. 400, 2 Ann. Cas. 367, and, in particular, as follows: "Since, therefore, no bonds may be issued for any purpose, or for any set of purposes, unless the people be consulted and give their consent, every voter must have a fair opportunity to register an intelligent expression of his will." Guided by these principles, and upon logical grounds, I am therefore of the opinion that the question submitted in the instant case may not be termed single. Can it be properly said that the real question submitted was,—Shall the city issue bonds for the purpose of providing a system of waterworks? If a question in such form had been submitted would there be any question about its illegal character? The statute permits the city to purchase, erect, lease, rent, manage and maintain any system of waterworks. Sess. Laws, 1921, chap. 34. The Constitution permits the bonding of a city for the purpose of constructing or purchasing waterworks. N. D. Const. § 183. Assuredly, an authorized bond issue does not comprehend leasing or renting a waterworks system. If the voters had authorized a bond issue for constructing a waterworks system, manifestly, it would not have authorized the purchase of an existing

system. Again, if the voters had directed a bond issue for the purchase of a waterworks system, the bonds or the proceeds thereof could not be used for the construction of a waterworks system. May it be urged logically that, since, the proposition submitted to the voters in the instant case is single, the city is authorized to use the bonds or the proceeds thereof to *both construct and purchase* a waterworks system? Yet the issue as submitted to the voters requires *either a purchase or a construction.* Two propositions are involved; either, a construction, or a purchase. A bond issue may be authorized for construction; a bond issue may be authorized for purchase. The two propositions are dissimilar; the constitutional and statutory statement in the alternative emphasizes the dissimilarity. Hence, if the discretion is placed in the people requiring the sanction of a favorable vote to authorize the bond issue, this discretion must express itself upon a definite proposition and purpose and may not be delegated to those to whom it has not been entrusted. Leavenworth v. Wilson, supra; Cain v. Smith, 117 Ga. 902, 44 S. E. 5. Furthermore a rule of strict construction applies to the proceedings in the case at bar: Stern v. Fargo, supra. The voters have directed a bond issue payable one twentieth each for twenty years with interest at 5 per cent per annum; the ordinance involved has changed the yearly payment so as to permit the issue of bonds in the denomination of $1,000 each, again a double proposition was submitted to the voters; *either* the bonds had to be issued in the denomination of $1,000 each or in part for a lesser amount; *or* the percentage of payments per year had to be varied: Again, through an ordinance, those to whom this discretion was not given seek to exercise such discretion. In my opinion, regardless of the deserving character of the project contemplated, the rule of 'law, as I see it, should be applied and an injunction awarded.