SCHATZ et al.

v.

CITY COUNCIL OF CITY OF NEW
ENGLAND et al.

No. 7350.

Supreme Court of North Dakota.

Dec. 4, 1953.

Strutz, Jansonius & Fleck, Bismarck, for appellants.

Cox, Cox, Pearce & Engebretson and Johnson & Rausch, Bismarck, for respondent Montana-Dakota Utilities.

No appearance for City of New England et al.

BURKE, Judge.

This is a taxpayers' suit in which the plaintiffs sought to enjoin the City of New England from selling its electric utility property to the Montana-Dakota Utilities Company. The proposal to purchase the property was filed by the Montana-Dakota Utilities Company with the city on June 4, 1951. On August 6, 1951 the city council, by its Resolution No. 108, resolved to submit the proposal to the qualified electors of the city at a special election to be held on September 18, 1951. The question submitted was:

"Shall the City of New England, Hettinger County, North Dakota, sell to Montana-Dakota Utilities Co., a Delaware Corporation, its successors and assigns, the electric public utility property now owned by said City of New England, pursuant to the written offer or proposition to purchase which offer or proposition is on file in the office of the City Auditor of the said City of New England?"

A copy of the proposal to purchase was published with the notice of election as required by Section 40–3303, NDRC 1943. The essentials of the proposal of purchase were that the Montana-Dakota Utilities Company would pay the city $105,000, extend its natural gas mains to the city and construct a natural gas distribution system within the city, if the city would convey to it the electric utility property owned by the city and grant it a twenty year electric utility franchise and a twenty year natural gas utility franchise.

The election was held according to notice. The vote was 274 in favor of the acceptance of the proposal and 223 against. Pursuant to the mandate of this election the city council adopted Ordinances No. 89 and No. 90 granting 20 year gas and electric franchises to the Montana-Dakota Utilities Company. Both ordinances were vetoed by the mayor and both were passed over his veto. The council also adopted Resolution No. 110 by which it accepted the offer to purchase. This resolution was also vetoed by the mayor. It was then reconsidered and adopted over the veto. Thereafter the city council again accepted the proposal to purchase by Ordinance No. 91. This ordinance was not vetoed.

These proceedings are challenged by plaintiffs upon four grounds: 1, That the election was invalid because the question voted on, contained at least two separate and distinct propositions; 2, That the proposed sale is illegal because it is unreasonable; 3, That the proposed sale is illegal because there was no appraisal made of the property to be sold; and 4, The proposed sale is illegal because the mayor vetoed the resolution accepting the proposal.

Concerning their first contention plaintiffs say that the question submitted at the election contained two separate and distinct propositions: 1, Shall the city sell its electric plant? and 2, Shall the city have natural gas? In support of this contention they introduced in evidence advertisements published in the New England papers, in which the proponents of the proposal laid great stress upon the benefits the

city would receive from the installation of natural gas. They offered the testimony of several individuals who, they said, would have testified that the only reason they voted for the proposal was because its adoption would bring natural gas to the city. They cite decisions of this court in which we have held elections, upon the approval of bond issues, to be invalid because several separable and distinct propositions were presented by a single question on the ballot. Stern v. City of Fargo, 18 N.D. 289, 122 N.W. 403, 26 L.R.A.,N.S., 665; Logan v. City of Bismarck, 49 N.D. 1178, 194 N.W. 908. The statute concerning the sale of a municipal utility is Section 40–3303, NDRC 1943. It provides:

"No municipality shall sell any municipal plant, system, or line, nor lease the same, or any substantial part thereof, or interest therein, to any person, firm, or corporation unless the person, firm, or corporation shall have filed in the office of the clerk or auditor of the municipality a complete written offer or proposition, nor unless a majority of the qualified electors of the municipality shall have voted in favor of accepting the offer or proposition at an election called, held, and conducted as specified in section 40–3302. A copy of the offer or proposition shall be published with the notice of the election. * * *"

The language of this statute is clear. It requires the filing of a complete written offer and the approval of the complete offer by the electorate.

Here the prospective purchaser offered to pay $105,000 and extend its gas distribution lines to the city as consideration for the purchase of the city's electric utility and the granting of electric and gas franchises. In the sense that the purchaser offered to perform several separate acts in exchange for the performance of several separate acts on the part of the city, the offer is multiple in nature, but as limited by the terms of the offer it is a single proposal. The complete offer must be accepted or rejected in its entirety. The number and diversity of the commitments to be performed by the respective parties in order to execute the contract do not have the effect of converting such a proposal into a double or multiple proposition as long as the commitments are interdependent and the complete offer must be accepted or rejected in toto. An attempt to submit such a proposition by separate questions on the ballot would be futile. Only one question can be submitted and that is whether the complete proposition shall be accepted or rejected.

Plaintiffs' second contention, that the ordinance accepting the proposal to purchase is so unreasonable that in enacting it the city council exceeded the powers delegated to it by the legislature, is predicated, 1, On the fact that the proposed conveyance includes real property upon which a public rest room, the city jail and part of the city's water storage facilities are located; 2, That the proposal is uncertain as to whether a truck owned jointly by the city electric utility and the city waterworks was to be included in the sale and 3, That there is no mutuality in the contract.

We see no need to discuss these contentions at length. The proposed deed reserves to the city an "easement over and upon lands it now occupies to maintain the water tank, water mains, and buildings used in connection with the municipal waterworks so long as the land is used for such purpose." It appears that both the jail and the public rest room are located in buildings used by the waterworks and are covered by the easement. The purchaser states in its brief that such is its interpretation of the easement. It appears therefore that the city is adequately protected in the use of its waterworks, jail and rest room for as long as it wishes to use them.

Any uncertainty that may have existed as to whether the truck was included in the sale or not has been removed by the purchaser's concession that the uncertainty may be resolved in favor of the city.

Plaintiffs' claim of lack of mutuality rests on the fact that the contract does

not provide a time limit within which performance must be completed by the purchaser but only a limit within which performance must be commenced; that there is no provision for termination of the contract by the city if the company does not perform, and that the city "will be required to pay approximately one third of the sales price immediately when certain items are deposited in the Bank of New England, regardless of whether the other portions of the contract are thereafter carried out or not."

There is no merit in these contentions. The contract provides that the purchaser shall deposit its certified check for $105,000 with the Bank of New England; that the city shall deposit a deed and bill of sale of the real and personal property to be transferred with the same bank, that the purchaser will extend its gas pipe system to the city as expeditiously as possible; and that within ten days after gas is delivered, the bank is to deliver the bill of sale and deed to the purchaser and deliver the certified check to the city. Certainly there is no lack of mutuality in this contract as there are mutual obligations to be performed by both parties. The claim of unreasonableness seems to be based upon the speculation that there may be a long delay between the time the purchaser completes the extension of its gas line to the city and the time when it completes its distribution system within the city. Self-interest, however will be a sufficient incentive to the completion of the distribution system either contemporaneously with or as soon as possible after the delivery of gas to the city. We think the contract gives reasonable assurance to the city of performance by the purchaser.

The city will suffer no detriment if it pays out a part of the purchase price before the distribution system is completed. This payment will be the payment of its outstanding indebtedness upon the utility sold and such payment is required by statute. Certainly the city can suffer no injury by the payment of its debts. Upon a consideration of the whole record we are satisfied that plaintiffs have failed to establish unreasonableness, particularly in that degree which

would place the act of accepting the contract beyond the powers delegated to the city by the legislature.

Plaintiffs' third proposition, that the proposed sale is void because no appraisal of the property was made is founded upon the contention that the consideration agreed to be paid is so inadequate that it is both unreasonable and in violation of Section 185 of the Constitution of the State of North Dakota which provides:

"* * * neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, * *."

We see no defect in the proceedings arising from the bare fact that no appraisal was made. The procedure for such a sale is prescribed by statute and that statute does not require an appraisal. This holding however does not dispose of the challenge to the sufficiency or reasonableness of the consideration. In opposition to the contention of the plaintiffs in this regard, the purchaser urges both, that the question is not one which is before the court, and also that the consideration is reasonable.

The consideration was passed upon and found reasonable by the city council when it voted to present the purchaser's offer to the electorate. It was again passed upon and approved when the electorate voted to accept the proposal. There is no claim of any fraud or bad faith nor any contention that the acceptance of the proposal did not result from the exercise of the honest judgment of both a majority of the councilmen and the electorate. May a court in such circumstances review that judgment?

Chapter 40–33, NDRC 1943, vests in municipalities the power to sell municipal utilities. The power to sell implies the power to bargain. This power to bargain must in the very nature of things rest in the governing body of the municipality even though the bargain made is not effective until approved by the electorate. The making of the bargain and the obtaining of an

offer which it approves and which it could reasonably and justifiably submit to the electorate involves the exercise of discretion and judgment upon the part of the governing board of municipality.

It is well settled that "The discretionary powers of municipal authorities will not be interfered with in a suit by a taxpayer for an injunction in the absence of fraud or palpable abuse". 64 C.J.S., Municipal Corporations, § 2142, page 958. This rule has been applied in many cases where the discretionary power of municipal authorities was exercised in the determination of the price to be obtained from leasing or selling property owned by a municipality. In White v. City of Grand Rapids, 260 Mich. 267, 244 N.W. 469, it was held:

"Whether city commission made good or bad bargain in leasing city's electric lighting plant held not reviewable by court."

In Colwell v. City of Great Falls, 117 Mont. 126, 157 P.2d 1013, 1022, it was said:

"The question of the amount and nature of the consideration received * * * is a matter which only concerned and only concerns the Mayor and Council of the defendant city and a court of equity will not interfere at the suit of a taxpayer to restrain the officers of a municipal corporation in the exercise of their discretionary powers, which exist herein, with regard to the control or disposition of the property of the municipality, in the absence of illegality, fraud, or clear abuse of their authority, * * *."

In Smart v. Graham, 179 Md. 476, 20 A. 2d 574, 580, the court said:

"However, it is the settled principle upon which courts act in dealing with a sale like the present one that it will not be set aside because of difference of opinion among witnesses as to the value of the property, or unless the price received be so grossly inadequate as to indicate a want of reasonable judgment and discretion, or misconduct or fraud, or some mistake or unfairness for which the purchaser is responsible."

See, also, Mathews v. Darby, 165 Ga. 509, 141 S.E. 304; Green v. City of Rock Hill, 149 S.C. 234, 147 S.E. 346; Truesdale v. City of Columbia, 203 S.C. 333, 27 S.E.2d 455; Quackenbush v. City of Cheyenne, 52 Wyo. 146, 70 P.2d 577.

The instant case differs from the cases cited above, in that here, the applicable statute required that the discretion exercised by the municipal authorities be approved and ratified by the electorate. In our opinion, however, such fact is an additional reason why the courts should not interfere with the discretion exercised. We therefore adopt the view that the municipal authorities' judgment with respect to adequate consideration for the sale of municipal property may not be reviewed in a taxpayer's suit for an injunction in the absence of fraud, unless the price received be so grossly inadequate as to indicate a want of reasonable judgment and discretion.

There is no proof of such gross inadequacy in this case. Here the city was to receive $105,000 and the extension of gas service to the city as consideration for the sale of its electric utility. The plaintiffs offered the testimony of witnesses who, according to the terms of the offer, would have testified that in their opinion the value of the utility was $150,000. This offer was rejected by the trial court. But if we consider the record to include this excluded testimony, it still would not show gross inadequacy of consideration. The audit of the affairs of the City of New England as of June 30, 1951 shows the book value of the utility to be $80,284.63. The cash part of the consideration was therefore approximately $25,000 more than the book value of the utility and the question of the value to the city of the extension of gas service thereto is one which was peculiarly within the knowledge of the municipal authorities and the electorate.

Plaintiffs' last contention is that proceedings for the transfer of this property are invalid because the resolution

proposing to carry into effect the proposal of sale was vetoed by the mayor.

The resolution referred to is Resolution No. 110 which was adopted by the city council, after the proposal to purchase had been legally submitted to the electorate by proper resolution and after the electorate had approved the proposal. This resolution was mere surplusage. After proper submission to the electorate and approval thereby, nothing remained for the city authorities to do except to carry the proposal into effect. There was no need for the council to resolve to do what the electorate had directed it to do.

The judgment of the district court is affirmed.

MORRIS, C. J., and SATHRE, CHRISTIANSON, and GRIMSON, JJ., concur.